No. 34,109

VERDIGRIS RIVER DRAINAGE DISTRICT No. 1, MONTGOMERY COUNTY, *Appellee*, v. (CITY OF COFFEYVILLE, AND BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF MONTGOMERY, *Appellees*), THE STATE HIGHWAY COMMISSION OF THE STATE OF KANSAS, *Appellant.*

(86 P. 2d 592)

Opinion filed January 28, 1939.

*Lester M. Goodell,* of Topeka, *Otho W. Lomax* and *James A. Brady,* both of Cherryvale, for the appellant.

*Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the Verdigris River Drainage District No. 1, Montgomery county, against the city of Coffeyville,

the board of county commissioners of Montgomery county, and the state highway commission, to recover a money judgment alleged to be due as costs and expenses for the repair of a floodgate in plaintiff's levee. The action was brought in the district court of Montgomery county.

The highway commission interposed a motion to quash the pretended service of summons on it in Shawnee county for the reason such service conferred no jurisdiction on the district court of Montgomery county, and that the proper venue for an action against it was in Shawnee county. It also lodged a demurrer which likewise challenged the jurisdiction of the court and the sufficiency of the petition to state a cause of action against it. The motion and demurrer were overruled, and from those rulings the state highway commission appeals. No other rulings, orders or judgments, if any exist, affecting the liability of the county commissioners of Montgomery county, or the city of Coffeyville, are before us for review. We shall refer to the plaintiff as the drainage district, to the Board of County Commissioners of Montgomery county as the county, to the city of Coffeyville as the city, and to the state highway commission as the commission.

The pertinent facts contained in the petition were in substance as follows: The drainage district is situated within Montgomery county, and its territory comprises the eastern part of the city of Coffeyville and the land between the east boundaries of the city and the Verdigris river. Many years ago, the exact date being unknown, the drainage district caused to be constructed and has maintained a levee on the north, east and south sides of the drainage district, for the purpose of preventing the floodwaters of the Verdigris river from inundating the territory within the drainage district. In the year 1921, and prior thereto, what is now known as Sunflower street was a county road, and was maintained by the county. Prior to the year 1921 the city had so arranged its streets and alleys, and has at all times since so maintained them, that in times of heavy rains the water falling within the city would flow east and cover and flood the road and thus cause it to be difficult for the county to maintain and keep it open for travel. The county desired to cut the north levee and to install therein a drain and floodgate in order to take care of the floodwaters covering the road. On December 20, 1921, the county and the drainage district entered into a written contract permitting the county to cut the levee and construct a

drain therein equipped with a floodgate. The contract required the county to maintain the drain and floodgate and further provided that in the event the county did not do so, the drainage district could make the necessary repairs at the expense of the county. (The contract was made a part of the petition.) The county did construct the drain and equipped it with a floodgate shortly after the execution of the contract.

The petition further alleged in substance: In the year 1928 the city extended its limits so as to include a part of the road within the limits of the drainage district. The part of the county road now within the city limits became a city street, and is known as Sunflower street. It is highway No. 169. That part of highway No. 169, also known as Sunflower street within the city, which is served and benefited by the drain and floodgate has, since the year 1928, been under the jurisdiction and supervision and has been maintained by the city and the commission.

The petition further set forth G. S. 1935, 24-452, which provides:

"That whenever any drainage district shall include any territory that comprises a part of any incorporated city which has constructed or desires to construct any sewer or drain through any embankment or levee constructed by such drainage district along the bank of any watercourse, so as to have an outlet for such sewers into said watercourse, it shall be the duty of such cities to maintain efficient floodgates and pumping apparatus, and keep the outlet of such sewers closed during periods of high water, so that the water cannot run back through such sewers and cause injury to lands protected by such levee; and if any city shall neglect to perform such duty the board of directors of such drainage district may provide the necessary floodgates and pumping apparatus and collect the cost thereof from such city; and the city shall be liable for all damages, if any, caused by such neglect of duty."

The petition further stated in substance: The territory of the drainage district comprises a part of the city. The drainage from the city empties through the levee into the watercourse of the Verdigris river by means of the drain through the levee. The drain through the levee and floodgates serves highway No. 169. On April 1, 1929, and pursuant to G. S. 1935, 68-418, the commission succeeded to the rights, duties and liabilities of the county under the contract of the county with the drainage district. The drain became out of repair in 1937. The petition concludes with averments relative to the repairs made by the drainage district, demand made on each of the defendants for payment and their refusal to pay.

From the facts pleaded we therefore find the following chronological order of events and the alleged source of the liability of the

various defendants: In 1921 the county became liable to the drainage district by virtue of its contract. In 1928 the city made itself 'liable to the drainage district by virtue of G. S. 1935, 24-452. In 1929 the commission became liable to the drainage district by reason of the contract between the latter and the county as provided by section 19, chapter 225, Laws of 1929 (G. S. 1935, 68-418).

Did the district court of Montgomery county have jurisdiction over the commission? Service was had on the city and the county within Montgomery county. Thereafter summons was served on the commission in Shawnee county. The commission is not a commercial or industrial corporation, such as may be organized under the general corporation laws of this state, but is an arm of the state. (*Rome Mfg. Co. v. State Highway Comm.*, 141 Kan. 385, 388, 41 P. 2d 761.) The legislature, by section 23, chapter 225, of the Laws of 1929, did specifically provide that actions for damages resulting from defective highways might be brought in the district court of the county in which the damage was sustained or in the district court of the county of which plaintiff is an actual resident at the time of sustaining such damage. (G. S. 1935, 68-419.) It has been definitely determined the venue of actions against the commission is in Shawnee county, except as to those matters in which the legislature has specifically provided an action against the commission may be brought elsewhere. (*State, ex rel., v. State Highway Comm.*, 133 Kan. 357, 358, 299 Pac. 955; *Rome Mfg. Co. v. State Highway Comm.*, supra; *Gresty v. Darby*, 146 Kan. 63, 68 P. 2d 649.) Except as to actions for damages resulting from defective highways, we find no specific provision that actions against the commission may be maintained in counties other than Shawnee county. Our concern is not with the wisdom of such legislation, but solely with the interpretation of legislative intent. The commission is an arm of the state. Since the legislature specifically consented only that a certain kind of action might be maintained against it in other counties than in Shawnee, we are forced to conclude it intended other actions against it should be maintained in the courts of the county where its main office and principal place of business was situated. If this is not an accurate interpretation of legislative intent, or if the legislature, after approximately ten years of operation under the act which created the commission, has decided to provide otherwise, it may readily do so.

· The drainage district urges jurisdiction by the district court of Montgomery county was obtained over the commission by reason of the provisions of certain general statutory provisions. G. S. 1935, 60-509, provides:

"Every other action must be brought in the county in which the defendant or some one of the defendants reside or may be summoned."

G. S. 1935, 60-2502, provides:

"Where the action is rightly brought in any county, according to the provisions of article 5, a summons shall be issued to any other county against any one or more of the defendants, on the plaintiff's praecipe."

G. S. 1935, 60-414, provides:

"Persons *severally* liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and endorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff." (Italics inserted.)

G. S. 1935, 60-411, provides:

"Any person may be made a defendant who has, or claims, an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of the question involved therein."

These are general statutes, and no authority is cited holding them applicable to service on the state or an arm of the state government. In the instant case, however, we need not decide whether the statutes relied upon by the drainage district could under no state of facts become applicable to the commission. It is sufficient to say we do not consider them as being controlling in the instant case. As heretofore stated, two defendants were served in Montgomery county. The drainage district contends that having obtained service on one or more defendants in Montgomery county, who were liable on the claim, its service on the commission in Shawnee county gave the district court of Montgomery county jurisdiction over the commission. That contention is based upon the theory the three defendants were severally liable. But were they severally liable at the time this action was instituted, and if either of the defendants in Montgomery county was liable, was the source of that liability such as to permit the drainage district to obtain service on the commission in Shawnee county?

We shall first consider the question of the present liability of the county. In doing so we need not consider the interesting contention of the commission that the liability of the county was superseded by

the liability of the city, when the city extended its boundaries prior to the 1929 highway act, so as to include in its streets that portion of the road to be benefited by the contract with the county. That question, so far as the record before us is concerned, has not been determined by the trial court, and in any event is not here for review. Assuming, however, without deciding, that the liability of the county was not superseded by the liability of the city so as to relieve the county of liability before the 1929 highway act became effective, what is the liability of the county now to the drainage district on its contract with the drainage district? In the case of *McCandliss Construction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 296 Pac. 720, plaintiff, a contractor, brought an action in the district court of Shawnee county against the highway commission and Neosho county, after the 1929 highway act became effective, to recover a balance claimed to be due him under a contract of April 1, 1926, with Neosho county, for the grading and hard-surfacing of a portion of a road in that county, which road was a part of the state highway system. Neosho county filed a motion to quash the service and to dismiss the action as to it. That motion was sustained. This court affirmed that ruling. The highway commission was the appellant in that case. In discussing the right of Neosho county to be sued in the district court of Neosho county, instead of being joined as a defendant with the highway commission in an action in Shawnee county, and in denying the continuing liability of Neosho county, this court said:

"Appellant complains because the trial court sustained the motion of the board of county commissioners to quash the service and dismiss. A brief filed in this court on behalf of the board of county commissioners raises the point that the appellant is not in position to be heard on that question, since the *plaintiff* made no appeal from that ruling. Perhaps this point is well taken; but, passing it, it is clear the ruling was proper. The board of county commissioners of Neosho county and the state highway commission are in no sense jointly liable to plaintiff. The contract sued on was made between plaintiff and the board of county commissioners of Neosho county. The state highway commission was not a party to the contract. Originally the board of county commissioners of Neosho county was the only party liable to plaintiff for the sums due him under the contract, but the legislature, by statute (Laws 1929, ch. 225), transferred that liability from the board of county commissioners of Neosho county to the state highway commission. *As between the board of county commissioners of Neosho county and the state highway commission the former is relieved from any further liability to plaintiff, and any liability there is to him is now imposed upon the state highway commission.* The board of county commissioners of Neosho county, as single defend-

ant liable, could not be sued in Shawnee county, but if plaintiff sought liability from it, was entitled to be sued in its own county; hence, if the point is before us, there is no error in the ruling." (p. 655.) (Italics inserted.)

In discussing the question of the continuing liability of Neosho county, this court further said:

"We notice that the statute took from the counties which had previously been doing the work on the state highway system all of their tools, materials and funds for carrying on that work. The legislature certainly would not have done that and left the counties liable for unpaid portions of the contract price." (p. 655.)

The drainage district does not contend a state is without power or authority to transfer the liability from one governmental unit to another governmental unit when the latter is compelled to assume the liabilities of the former, takes possession and control of the funds of the former and supersedes its governmental functions. The drainage district, however, contends it was not necessary for this court to determine in the McCandliss case that Neosho county could not be joined with the commission in the action in Shawnee county, and therefore that part of the decision should not be regarded as controlling in the instant case. In the McCandliss case this court had before it the questions—so far as the highway commission was concerned—as to whether the state had consented to be sued, and if so, whether the commission was liable on the balance claimed as constituting an existing contract under the highway act. The commission, appellant, also raised the question in this court of the correctness of the ruling of the trial court in quashing the service on Neosho county, and dismissing the action against Neosho county. It was one of the contentions of Neosho county in this court that the plaintiff, the McCandliss Construction Company, had not appealed from the ruling as to Neosho county, and that the commission, the appellant, had not properly perfected a cross-appeal on such ruling. This court, instead of treating the technical question of whether an appeal had been properly perfected on the ruling in favor of Neosho county, decided to treat the question on its merits, and said that Neosho county could not be so joined in the action in Shawnee county and further said Neosho county was no longer liable on the contract. The ruling was clearly proper and vital to Neosho county for the obvious reason that if Neosho county was no longer liable on the contract, then the order of the trial court dismissing the action against it was correct ir-

respective of the question of venue and irrespective of the further question of whether an appeal from the order quashing the service on Neosho county and dismissing the action as to it, had been properly perfected.

The drainage district urges the statutes on joinder of parties defendant, and the statutes on venue cited by it were not mentioned or considered in the McCandliss case. The contention is too broad. While G. S. 1935, 60-2502, and G. S. 1935, 60-414, are not mentioned in the McCandliss opinion, they and other statutes were very definitely presented in the brief of Neosho county, together with pertinent decisions. The decision in the McCandliss case would indicate they were considered.

Moreover, this court remains of the opinion that the statement in the McCandliss case that Neosho county was no longer liable on the contract, was sound, and we hold the county in the instant case is not now liable on its contract.

The drainage district cites *Roberts v. Nemaha County Commissioners,* 133 Kan. 15, 298 Pac. 754, as authority for holding the county liable on its contract. That particular question does not appear to have been an issue in the case, nor was the question of venue involved. While the opinion does not disclose that the commission consented to be made a party defendant in the district court of Nemaha county, the brief of the commission filed in this court clearly indicates it did so consent. Furthermore, we do not regard the Roberts case as authority for the contention that the county remains liable on its contract in the instant case. The brief of the commission filed in this court in the Roberts case, frankly admitted the commission was liable for any amount which was found to be due on the contract which the county had made with the plaintiff.

Since the county was no longer liable, service on it in Montgomery county, of course, did not authorize service on the commission in Shawnee county, even though the general statutes relied upon by the drainage district should be regarded as applicable to the commission. (*Voelker v. Broadview Hotel Co.,* 148 Kan. 326, 81 P. 2d 36.)

Did service on the city in Montgomery county authorize service on the commission in Shawnee county? We think it did not. The petition clearly discloses the city and the commission were not severally liable upon the same obligation. The petition also clearly indicates that liability of the commission was not based upon the theory the commission was a guarantor for the payment of the debt

of the city. The averments of the petition obviously did not bring the case within the provisions of G. S. 1935, 60-414. The case of *Furst v. Buss,* 104 Kan. 245, 178 Pac. 411, cited by the drainage district, involved the question of the right to join with the principal debtor a party who had executed a written guaranty for the payment of the obligation of the principal debtor. That is not this case. Furthermore, no question of venue appears to have been involved in the Furst case. Nor is the decision in the Furst case applicable as between the county and the commission in the instant case. That is true for the obvious reason that the highway act did not make the commission a guarantor for the payment of the county's debt in the event of the county's failure to pay the debt. The highway act wiped out the debt as against the county and made the commission solely liable therefor.

The source of the city's liability, as pleaded, is entirely separate and distinct from the source of the liability of the commission. Different evidence would be required to establish the respective liabilities. That fact is clearly disclosed upon the face of the petition. The liability of the city, according to the petition, is based on the provisions of G. S. 1935, 24-452, the theory of the drainage district being that the acts of the city in extending its boundaries and the use the city made of the drain and floodgate created the liability of the city under the provisions of G. S. 1935, 24-452. The liability of the commission, according to the petition, arose out of the contract between the county and the drainage district, by virtue of section 19, chapter 225, of the Laws of 1929 (G. S. 1935, 68-418). This constituted a misjoinder of causes of action. (*Marshall v. Land Co.,* 75 Kan. 445, 89 Pac. 905; *Maynard v. Bank,* 105 Kan. 259, 182 Pac. 542; *Hall v. Hall,* 124 Kan. 466, 260 Pac. 645; *North American Finance Corp. v. Cannavan,* 130 Kan. 468, 286 Pac. 248.) In order to justify service of summons on a defendant in a foreign county, it is not sufficient to obtain valid service on one defendant in the county in which the action is properly brought, but the causes of action against the parties must be rightly joined. (*Marshall v. Land Co.; Maynard v. Bank; Hall v. Hall; North American Finance Corp. v. Cannavan,* all supra, and *Pleifke v. Cline,* No. 34,104, *ante,* p. 9, 85 P. 2d 996, and cases therein cited.) The result is the district court of Montgomery county obtained no jurisdiction over the commission.

From what has been said herein it must not be inferred that we

have determined the question of the city's liability nor the effect of such liability, if any, upon the liability of the commission. No ruling on those issues is now before us for review and we express no views on the question of the ultimate liability of either of those defendants. The question presented is whether the district court of Montgomery county obtained jurisdiction over the commission. The answer is in the negative and the ruling of the trial court on that question is reversed.