No. 34,384

The Verdigris River Drainage District No. 1, a Quasi-municipal Corporation, *Appellee,* v. The City of Coffeyville, and The Board of County Commissioners of the County of Montgomery, *Appellants.*

(97 P. 2d 105)

Opinion filed December 9, 1939.

*Aubrey Neale,* of Coffeyville, and *Clement H. Hall,* county attorney, for the appellants.

*Charles D. Welch,* of Coffeyville, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action to recover money. Judgment was for plaintiff. Defendant appeals.

The plaintiff is a drainage district in Montgomery county. The action is brought to recover money which the drainage district was compelled to expend to repair a floodgate in the dike which was installed, pursuant to the terms of a contract between Montgomery county and the drainage district. The action was originally brought in Montgomery county against the state highway commission, the city of Coffeyville and Montgomery county. Service was obtained on the state highway commission at Topeka. The commission filed a motion to quash the summons. This motion was overruled and the commission appealed. The judgment of the trial court was reversed in *Verdigris River Drainage District v. City of Coffeyville,* 149 Kan. 191, 86 P. 2d 592. This court held that the action against the highway commission should have been brought in Shawnee

county. When the action was tried on its merits the result was a judgment against both the city and the county. They both appeal.

The trial in the court below was on an agreed statement of facts. This stipulation, after stating the corporate nature of the parties, was as follows:

"IV

"That in the year 1921, and prior thereto, what is now Sunflower street in the city of Coffeyville was a county road, and was being maintained by and was under the jurisdiction of the defendant, the board of county commissioners of Montgomery county, Kansas; that prior thereto the defendant, the city of Coffeyville, had so arranged its streets and alleys and ever since has and does now so maintain them, that in the times of heavy rains the water falling within said city would flow east and cover and flood said county road, causing it to be difficult for defendant, the board of county commissioners of Montgomery county, Kansas, to maintain said road, and keep the same open for travel.

"That the defendant, the board of county commissioners of Montgomery county, Kansas, was desirous of obtaining permission of the plaintiff to cut the plaintiff's north levee and to install therein a drain and floodgate, which would thereby take care of said flood waters covering said road, and thereupon, on the 20th day of December, 1921, the defendant, the board of county commissioners of Montgomery county, and this plaintiff entered into a written contract, duly executed and delivered by the duly authorized officers of each of the parties thereto, whereby the plaintiff agreed to permit said defendant, the board of county commissioners of Montgomery county, to cut its levee as aforesaid and construct a drain therein, equipped with a floodgate, on condition that defendant, the board of county commissioners of Montgomery county, would, at its own expense, maintain said drain and floodgate and keep it in repair during the existence of said levee, which the defendant, the board of county commissioners of Montgomery county, agreed to do.

"That said contract provided, among other things:

" 'It is further agreed that in case first party (the board of county commissioners of Montgomery county) fails or neglects to properly maintain said drain and floodgate, then, that the second party may take such steps as to it shall appear to be necessary to properly maintain and repair the same, at the expense of the first party, and the first party agrees to pay to the second party all of the necessary expenses incurred by the second party in so maintaining and repairing said drain and floodgate.'

"A true and correct copy of said contract is hereto attached, made a part hereof and marked 'Exhibit A.'

"V

"That defendant, the board of county commissioners of Montgomery county, in pursuance with said contract, constructed said drain in plaintiff's levee, equipped with floodgate, shortly after the execution of said contract.

"VI

"That thereafter and about the year 1928, the city extended its city limits so as to include a part of said county road which was served and drained by said drain and floodgate through plaintiff's levee; that the part of said county road

which was taken into the city is known as Sunflower street and what was formerly said county road is now known as highway 169.

"That ever since 1928, that part of what was formerly said county road which is within the city, and part of the territory of the city which is not within the boundaries of the plaintiff district, have been and now are being drained by means of said drain and floodgate into the Verdigris river.

"VII

"That thereafter, on April 1, 1929, and pursuant to section 60[68]-418, G. S. Kansas, 1925, the defendant, state highway commission, succeeded to the rights, duties and liabilities of the defendant, the board of county commissioners, with reference to said highway 169, and its obligations under said contract.

"VIII

"That on or about April 1, 1934, the defendant, the city of Coffeyville, waived its right to collect $250 per mile from the state highway commission of the state of Kansas, and that since April 1, 1934, all of said road which is served and benefited by said drain and floodgate has been and now is under the jurisdiction and supervision and has been maintained by the defendant, the state highway commission, a copy of the resolution of the state highway commission being attached hereto, made a part hereof, and marked 'Exhibit B.'

"IX

"That section 24-452, G. S. Kansas, 1935, provides as follows:

"'*Sewers Through Levees; Floodgates and Pumping Apparatus; Duty of Cities; Costs.* That whenever any drainage district shall include any territory that comprises a part of any incorporated city which has constructed or desires to construct any sewer or drain through any embankment or levee constructed by such drainage district along the bank of any watercourse, so as to have an outlet for such sewers into said watercourse, it shall be the duty of such cities to maintain efficient floodgates and pumping apparatus, and keep the outlet of such sewers closed during periods of high water, so that the water cannot run back through such sewers and cause injury to lands protected by such levee; and if any city shall neglect to perform such duty the board of directors of such drainage district may provide the necessary floodgates and pumping apparatus and collect the cost thereof from such city; and the city shall be liable for all damages, if any, caused by such neglect of duty.'

"Plaintiff's territory comprises part of the territory of the defendant, the city of Coffeyville, and that the said drainage from the defendant city now empties through plaintiff's levee into the watercourse of the Verdigris river by means of said drain through its levee aforesaid, and that said drain through its levee and the floodgate therein serve said highway 169.

"X

"That thereafter said drain became out of repair and in such condition that it was unsafe in times of flood upon the Verdigris river, and it was necessary for the protection of the plaintiff district that said drain and floodgate be repaired and plaintiff, in August, 1937, made demand upon each of said defendants that they repair said drain and floodgate, but that each of said defendants

failed, neglected and refused to do anything about repairing said drain and floodgate.

. . . . . . . . . . . . . . . . . .

"XII

"In February, 1938, plaintiff caused a written, itemized, verified claim for said expenses of repairing said drain to be filed with and presented to each of the defendants, and they and each of them have failed and refused to allow or pay said claim, and that the county auditor of Montgomery county has disallowed plaintiff's claim against said county."

We shall first consider the appeal of Montgomery county. When the highway commission appealed from the order of the district court refusing to sustain its motion to quash the service of summons upon it, the drainage district argued that since it had obtained service on one or more defendants in Montgomery county who were liable on the claim, its service on the commission in Shawnee county gave the district court of Montgomery county jurisdiction over the commission. This argument necessitated a consideration of the liability of the county. It will be noted from the agreed stipulation that the floodgate was first necessary in 1921 in order that a portion of a county road might be adequately drained, and that the county and the drainage district entered into a contract for the consideration by which it was agreed that the county might construct the floodgate and that if the board of county commissioners should fail to properly maintain the floodgate then the drainage district could repair it at the expense of the county. The drainage district argued before in this court and argues now that the county is liable under the above provision because the county did construct the floodgate, it did get out of repair, and the drainage district did expend the amount claimed in repair of the floodgate. We shall lay aside the question of the claimed liability of the city for a moment and consider only the question of the liability of the county. It will be remembered that the highway, the drainage of which made this floodgate necessary, was a part of a county road and was maintained by the county and was a part of the state highway system, and on April 1, 1929, pursuant to G. S. 1935, 68-418, the state highway commission succeeded to the rights, duties and liabilities of the board of county commissioners with reference to county roads that were taken into the state highway system under that section. In the opinion in *Verdigris River Drainage Dist. v. City of Coffeyville,* supra, this court considered the question of liability of the county

as it had been considered in *McCandliss Construction Co. v. Neosho County Comm'rs,* 132 Kan. 651, 296 Pac. 720, and said:

"Moreover, this court remains of the opinion that the statement in the McCandliss case that Neosho county was no longer liable on the contract, was sound, and we hold the county in the instant case is not now liable on its contract." (p. 198.)

The first syllabus in *Verdigris River Drainage Dist. v. City of Coffeyville,* supra, is instructive on this point. It is as follows:

"Under the provisions of section 19, chapter 225, of the Laws of 1929, the State Highway Commission assumed the rights and liabilities of the various counties of the state on all existing contracts for the construction, improvement, reconstruction or maintenance of state highways and bridges, and the counties are not now liable on such contracts."

On this point the plaintiff argues that the question of whether the county was relieved of its liability by the enactment of G. S. 1935, 68-418, was not properly presented when the case was here before. This argument is not borne out by the record. A decision of the point was necessary for a decision on the vital point in the case. The question of the correctness of the ruling on the motion to quash turned upon the question of the liability of the county. The question was carefully considered in the opinion of this court. Moreover, the drainage district cites and relies on the case of *Roberts v. Nemaha County Comm'rs,* 133 Kan. 15, 298 Pac. 754, and that opinion was cited in the former case and distinguished in the opinion.

The drainage district argues that to give the statute such a construction as to relieve the county from its obligation to perform its contract will render the statute unconstitutional under section 10, article 1, of the United States constitution, which section provides "No state shall . . . pass any bill . . . or law impairing the obligation of contracts." The question of the city's liability is the only issue which can properly be presented in the instant appeal. The question of the county's liability was definitely and conclusively set at rest when the case was here before. (*Verdigris River Drainage Dist. v. City of Coffeyville,* 149 Kan. 191, 86 P. 2d 592.) (See Syl. ¶ 1 and pp. 197, 198.) The subject of the county's liability is not a proper question to be considered here, further than to state that the question of the county's liability was previously considered and denied. After our previous opinion the county promptly should have been dropped as a party defendant. That

decision bound not only the litigants but the trial court as well. The court should not have ignored it.

The next question is the liability of the city of Coffeyville. It will be noted that this floodgate was constructed in 1921. At that time all the territory involved was outside the city limits. In 1928 the city enlarged its limits so as to include a part of the highway in question within the limits of the drainage district, and ever since that date that part of the highway, also known as Sunflower street within the city, which is served and benefited by the floodgate in question has been under the jurisdiction and supervision and has been maintained by defendant, the city of Coffeyville, and the state highway commission. The drainage district contends that the city is liable under G. S. 1935, 24-452. That section provides as follows:

"That whenever any drainage district shall include any territory that comprises a part of any incorporated city which has constructed or desires to construct any sewer or drain through any embankment or levee constructed by such drainage district along the bank of any watercourse, so as to have an outlet for such sewers into said watercourse, it shall be the duty of such cities to maintain efficient floodgates and pumping apparatus, and keep the outlet of such sewers closed during periods of high water, so that the water cannot run back through such sewers and cause injury to lands protected by such levee; and if any city shall neglect to perform such duty the board of directors of such drainage district may provide the necessary floodgates and pumping apparatus and collect the cost thereof from such city; and the city shall be liable for all damages, if any, caused by such neglect of duty."

At the time the floodgate was repaired it was for the benefit of the city. The first requirement of the above statute is that the "drainage district shall include any territory that comprises a part of any incorporated city." This requirement is met. The next requirement is that the city "has constructed or desires to construct any sewer or drain." The drainage district argues that this requirement is met by the fact that the drain in controversy was partly constructed by the city. We can find nothing in the agreed statement of facts to this effect. Paragraph 5 of the agreed statement of facts states the board of county commissioners, in pursuance of the contract, constructed the drain shortly after the execution of the contract.

The plaintiff argues further that the fact that the city has taken over and used the drain and that the drain and floodgate are necessary to the city is a substantial compliance with the statute. No authorities are furnished us wherein such a rule is announced. The question turns upon the construction to be given the statute. The

city did not construct a drain nor does it now desire to construct a drain. The drain was already constructed before the city ever had any interest in the matter. To give the statute the meaning contended for by the city would be to read into the statute words that are not there. This court does not care to do that.

The judgment of the trial court is reversed with directions to render judgment for the defendants.

Smith, J. (concurring specially): I am unable to agree with what the majority opinion says about the consideration this court should give the argument of the drainage district as to the constitutionality of G. S. 1935, 68-418. This stand has no effect on the final outcome of the action, since we all agree that the county is not liable. I think it is important, however, that this court should not say that it will not consider an argument directed at the constitutionality of a statute which purports to relieve one municipality of liability and places that liability on another. Such a question is of grave public importance and I doubt if this court ever would be justified in closing its ears to arguments on it. There are cases, of course, where a cause has gone to final judgment, and in the interest of expediting the business of the country the question may not be opened for further litigation. Such was not the case here, however. Suppose that on the presentation of the present appeal this court should have been convinced that the statute was unconstitutional. Does anyone doubt that the court would have so held regardless of the holding in the former case? If the foregoing be answered in the affirmative, then certainly the arguments on the question should be noted, else how would this court reach a conclusion as to the constitutionality of the statute. The question arises as to why the action was not dismissed as to the county when it was sent back to the district court. The answer is that as far as this record discloses no one asked that it be dismissed on that ground. The question of the constitutionality of the statute is argued in the briefs of the county in this court now. Regardless of what was said in the previous opinion, the question is here and should receive consideration. This statute only transfers the obligation to another municipality of the state. No new terms or conditions are involved. The rule is laid down in 12 C. J. 1003, as follows:

"Municipal corporations, such as counties, cities, and towns, being mere creatures and agents of the state, stand in their governmental or public character in no contract relations with the state, and so are not within the provision that renders laws impairing the obligation of contracts unconstitutional."

Also note—

"And as incidental to territorial change, the legislature may direct the manner in which debts or liabilities of the municipalities affected shall be met and by whom, as to it seems equitable." (12 C. J. 1007.)

WEDELL, J. (concurring specially): I concur in syllabus paragraph 2, and in the corresponding portion of the opinion. I desire to emphasize the fact that the stipulation expressly conceded—"that since April 1, 1934, all of said road which is served and benefited by said drain and floodgate has been and now is under the jurisdiction and supervision and has been maintained by the defendant, the state highway commission."

I also concur in that portion of the opinion which states that the question of the county's liability was definitely and conclusively set at rest when the case was here before, that the litigants and the trial court were bound by that judgment and that the question of the city's liability is the only issue which properly can be presented in the instant appeal. That being true, only one issue remains and that is the issue of the city's liability. There is, therefore, no occasion for that portion of the instant opinion which again reviews the question of the county's liability, and especially is there no occasion, under the circumstances, for syllabus paragraph 1, which discloses that we have again reviewed the question of the county's liability and that we adhere to our former decision.

The finality of the former judgment of course embraces every issue, insofar as the instant action is concerned, which might have been raised on the question of the county's liability. The constitutional issue is no exception. It is elementary that plaintiff was required to assert all grounds on which it believed the county to be liable when the question of the county's liability was expressly an issue in the first hearing. The constitutional issue was not raised on the first trial nor on appeal to this court. Our former opinion specifically called attention to the fact such constitutional issue was not raised. We said:

"The drainage district does not contend a state is without power or authority to transfer the liability from one governmental unit to another governmental unit when the latter is compelled to assume the liabilities of the former, takes possession and control of the funds of the former and supersedes its governmental functions." (Verdigris River Drainage Dist. v. City of Coffeyville, 149 Kan. 191, 197, 86 P. 2d 592.)

Plaintiff thereafter raised the constitutional issue in its petition for rehearing. This court did not ignore the contention. We noted

the contention, although the issue was not properly before us, and denied the petition for rehearing. The judgment relieving the county of liability became final. No judgment could thereafter be rendered against the county in the action between the same parties concerning the same subject matter on any ground, whether previously raised or not. The result is the constitutional question, regardless of its merit or lack of merit, simply is not here. Anything said upon that subject, regardless of how easily the subject might be disposed of, would not settle that issue.

THIELE, J., concurs.