No. 35,299

THE VERDIGRIS RIVER DRAINAGE DISTRICT No. 1, IN MONTGOMERY COUNTY, *Appellee,* v. THE STATE HIGHWAY COMMISSION, ETC., *Appellant.*

(125 P. 2d 387)

Opinion filed May 9, 1942.

*Otho W. Lomax,* of Topeka, argued the cause, and *Marc Boss,* assistant attorney general, and *A. Harry Crane,* both of Topeka, were on the briefs for the appellant.

*Charles D. Welch,* of Coffeyville, argued the cause for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for the plaintiff. Defendant appeals.

The petition alleged the nature of the parties and that the plaintiff was located in Montgomery county and many years ago had constructed and at the time the action was begun maintained a levee on the north, east and south sides of the district for the purpose of preventing the floodwaters of the Verdigris river from inundating the territory within the district; that about 1921 state highway 169 crossed the district from the north to south; that it was then a county road, maintained under the jurisdiction of the board of county commissioners of Montgomery county, and that prior to that time floodwaters from the city of Coffeyville would flood this road, making it difficult to maintain; that the board of county commissioners on December 29, 1921, entered into a contract with the plaintiff whereby the plaintiff agreed to permit the county commissioners to cut its levee and install therein a drain and floodgate which would take care of these floodwaters covering this road; that this contract contained the following clause:

"It is further agreed that in case first party (the Board of County Commissioners of Montgomery county), fails or neglects to properly maintain said drain and floodgate, then, that the second party may take such steps as to it shall appear to be necessary to properly maintain and repair the same, at the expense of the first party, and the first party agrees to pay to the second party all of the necessary expenses incurred by the second party in so maintaining and repairing said drain and floodgate."

The petition further stated that the board of county commissioners constructed this floodgate and also constructed a drain from the road in question whereby the water which formerly inundated the road flowed out through this drain; that on April 1, 1929, pursuant to G. S. 1935, 68-418, the defendant state highway commission succeeded to the rights of the board of county commissioners, the county road in question became a part of the state highway system and is now known as state highway 169; that thereafter this floodgate became out of repair, and the plaintiff in August of 1937 made demand upon the defendant to repair it; that the defendant refused to do this, and in December, 1937, the plaintiff caused the repairs to be made and incurred an expense of $1,160.44. The prayer was for that amount.

The answer of the state highway commission was a general denial.

The answer then admitted that the plaintiff was an organized district; that the state highway commission was an administrative branch of the government; that it controlled the state system of highways and that the drainage district maintained in 1921 and now maintains the floodgates and levees in question. The answer then alleged that the levees and floodgates were installed to protect the lands of the plaintiff drainage district in the city of Coffeyville. The answer also admitted the making of the contract, a portion of which is quoted in the petition. The answer then alleged that the contract was made without any authority of law; was *ultra vires* and beyond the power of and authority of the board of county commissioners of Montgomery county; that the drainage of the then county road was a secondary consideration. The answer then contained allegations, the general purport of which was that the floodgate and drains in question were in fact installed and maintained for the benefit of the city and the drainage district rather than the county and later the highway commission.

The reply was a general denial, and contained a further allegation that the floodgate had always served as a drain to protect the road in question and that this road after the passage of G. S. 1935, 68-418, became a part of the state highway system and it became the duty of the highway commission to maintain it.

The case was submitted to the trial court without a jury. The court's findings, except two which will be noted hereafter, were agreed upon by the parties. The facts are that the drainage district constructed levees on its north, east and south sides shortly after its organization in March, 1907. Part of the city of Coffeyville lay within this district. Drains were constructed and fitted with floodgates at various points to let floodwaters out of the district.

In 1921, and for a long time before that, there was a county road running north from East Eighth street in Coffeyville to Cherryvale, Kan. The south 4,167 feet of that road, which is called Sunflower street, was within the drainage district. The west half of the south 2,425 feet from First to Eighth streets was within the city limits of Coffeyville. The entire road, including that part within the city, had been designated as a part of the county-road system, pursuant to the Laws of 1921, chapter 219, section 1, now appearing as G. S. 1935, 68-506.

In September, 1927, the city extended its limits to include all the

drainage system and all of the highway in question except the east half of Sunflower street between First and Sterling streets, a distance of 1,577 feet to the levee on the north.

On December 20, 1921, the drainage district and the county entered into the contract referred to in the petition. Prior to December 20, 1921, the city had constructed a drain from the corner of Fifth and Union streets north and east to Second street, thence east to and ending at the west boundary of what is now Sunflower street. From the corner of Second and Sunflower streets the drain extended south along the west side of Sunflower street to plaintiff's south levee and out through the floodgate. After the contract in question was executed the county commissioners constructed a ditch connecting this drain to a place on the east where the levee was cut and a drain installed therein. On April 1, 1929, pursuant to G. S. 1935, 68-418, the defendant succeeded to the rights and liabilities of the county commissioners with reference to the state highway commission. Sunflower street is paved with a bituminous retread surface and it was impracticable for the city to maintain the equipment necessary for that type of surface. Since July 1, 1936, defendant has maintained the bituminous surface on that part of the old county road which is within the city, being the west half of the road from First street north 1,577 feet, and also that part of the old county road not within the city, but which is within the drainage district, which is 4,167 feet in length. In 1937 the drain and floodgate in question became out of repair, and plaintiff made the demand upon the defendant that was pleaded in the petition, but the defendant failed to repair it. In December, 1937, the plaintiff expended $1,160.44 repairing the floodgate. This was a reasonable charge for the work done. The itemized statement of this expense was handed the defendant and it refused to pay it. .

The following two findings were not agreed upon. They are as follows:

"16. That at the time the contract sued upon was entered into and for a long time prior thereto, the south part of said county road within the district, in times of heavy rains, would be covered with surface water which came from the west of the road to the extent that it became at times impassable. In addition, water would stand in the ditch at the side of the road. Most of this water, but not all, came from the west through a ditch constructed by the city which ended at the west side of Second and Sunflower streets (the county road). Water from this ditch would flow along the west side of the county road, cover the road, and stand in the ditch on the west side of the

road. At that time, whatever drainage the county road had was to the south along the said road to a floodgate in the south levee.

"The county desired to improve that part of the county road within the drainage district, but was unwilling to do so until the road was drained. The county decided the best way to drain this road was to construct a drain from the road, running east through the east levee of the drainage district, with a floodgate installed. The board of county commissioners negotiated with the drainage district, and as a result of those negotiations the contract in controversy was entered into whereby the county obtained consent to cut plain-. tiff's levee and install therein the floodgate in question. The construction of this drain and floodgate drained this county road.

"17. The facts involved in this action have been the basis of a suit in Montgomery county, from the decision of which two appeals have been taken to the supreme court, and are reported in the cases of the *Virdigris River Drainage District No. 1, versus City of Coffeyville,* 149 Kan., p. 191, and 150 Kan., p. 765."

Upon these findings the trial court concluded that the contract in question was a valid one for the draining of the county road referred to; that this contract was taken over and assumed by the defendant pursuant to G. S. 1935, 68-418, and that plaintiff should recover $1,375.10, being the amount expended with interest, together with costs.

The defendant filed a motion for additional findings and for a new trial and to set aside the findings of fact and conclusions of law. These motions were all overruled and judgment was entered in accordance with the above conclusions. The defendant has appealed.

The facts out of which this action arose have been the subject of two appeals to this court. On account of an argument that is made here by the plaintiff those two cases will be noted here.

The first one is *Verdigris River Drainage Dist. v. City of Coffeyville,* 149 Kan. 191, 86 P. 2d 592. The plaintiff argues that the effect of the holding of this court in that case was to make the highway commission liable. The decision can hardly be given that effect. That action was brought in the district court of Montgomery county by the drainage district against the city of Coffeyville, Montgomery county, and the state highway commission. The highway commission appeared specially and filed a motion to quash the service of summons upon it in Shawnee county on the ground that the proper venue of such an action against it was Shawnee county. The trial court overruled this motion and the commission appealed. The drainage district contended that since it had obtained service on the county and the city, who were liable on its claim, its service on the commission in Shawnee county gave the

district court of Montgomery county jurisdiction over the commission on the theory that the three defendants were jointly liable. In disposing of this argument this court held, among other things, that on the facts stated in the opinion the highway commission and not the county was liable. This court, however, took pains to say that from what was said in the opinion it must not be inferred that we had determined the question of the city's liability nor the effect of such liability, if any, upon the liability of the commission. We said:

"No ruling on those issues is now before us for review and we express no views on the question of the ultimate liability of either of those defendants." (p. 200.)

The drainage district then proceeded with the trial of the action on its merits against the city and the county. The trial court held both the city and the county liable. An appeal was taken to this court. (See *Verdigris River Drainage Dist. v. City of Coffeyville*, 150 Kan. 765, 97 P. 2d 105.) The case was submitted on an agreed statement of facts and the court awarded judgment against both. The county appealed. This court held that according to the agreed statement of facts the question of the liability of the county had been settled by our decision in the former case—that the state highway commission and not the county was liable on account of G. S. 1935, 68-418, which provided for the taking over of the liabilities of the county by the commission. The effect of the decision was that if the county had been liable in the first instance then the enactment of the above statute relieved it of liability. The question of whether the contract between the county and the drainage district was a valid one was not passed on.

We also held that the city was not liable on the theory advanced by the plaintiff. After that action was disposed of the district commenced this action in the district court of Shawnee county against the highway commission. For the first time in this series of cases the question of the validity of the contract between the county and the drainage district has been raised. Of course, if this contract was invalid as to the parties who entered into it, then the highway commission was not bound by it when it assumed the liabilities of the county. On the other hand, if the contract between the county and the district was valid, then the state highway commission became liable under the provisions of G. S. 1935,

68-418. (See *McCandliss Construction Co. v. Neosho County Comm'rs*, 132 Kan. 651, 296 Pac. 720.)

The commission on this appeal contends that the contract in question was entered into, as a matter fact, for the benefit of the city and that the street benefited is really a connecting link between two parts of the state highway system, and the commission does not have the authority to expend its funds for the maintenance of such a connecting link.

This argument is not good for the reason that the stipulation of facts as well as the two contested findings set out a situation where the east half of a considerable part of the highway in question is outside of the city and within the drainage district. The county was charged with the responsibility of maintaining this highway and later when the highway commission assumed the liability of the county such maintenance became their responsibility. The drainage of a highway is an important part of its maintenance. In fact, a highway cannot be maintained at all if sufficient drainage is not provided. The providing of this drainage was clearly the reason the contract, upon which this action was brought, was entered into by the county. At the time it was entered into there was a substantial amount of county road that benefited by the new drain. The fact that a portion of this road was later taken into the city did not relieve the county and later the highway commission from liability on the contract. This was a main-traveled highway and was partly within and partly without the city. The board of county commissioners had the authority to designate it as a part of the county road system. (See G. S. 1935, 68-506.) They had exercised this authority. Hence, when the highway took over the system of county roads in Montgomery county it took over this road as a part of that system.

The defendant next argues that the contract was invalid because it purported to bind the successors of the officers who entered into it. The language in the contract which defendant claims made it void is as follows:

"That it [the county] will forever, during the existence of said levee, maintain and keep in good condition said floodgate," etc.

Defendant argues that by this provision the officials who signed the contract purported to bind their successors forever regardless of whether the situation might change so that the location of the

road would be some place where these floodgates would be of no benefit whatever.

We do not have to answer that question because as the situation reaches us the floodgate is of benefit to a portion of the state highway. The general rule is laid down in 7 R. C. L., at page 945, section 21, and is as follows:

"But it is clear that if a board of county commissioner has express power to make a particular contract at any time during its term of office, a contract made by such board, in accordance with the law, a short time before the expiration of its term of office is not contrary to public policy, and, in the absence of fraud, is valid and binding upon an incoming board of commissioners, although it extends far into their term of office. The ground upon which this rule is based is that a board of county commissioners is a continuously existing corporation, and, consequently, while the personnel of its membership changes, the corporation continues unchanged. Its contracts being the contracts of the board and not of its members, it follows that those contracts extending beyond the term of service of its then members are not invalid for that reason. It has been said that to hold contracts invalid because part or all of a board cease to exercise public functions would be to put these corporations at an enormous disadvantage in making the contracts which are essential to the safe, prudent, and economical management of the affairs of a county. The members of a board of county commissioners cannot, however, contract in reference to matters which are personal to their successors."

See, also, *Ruff v. Shawnee County Comm'rs,* 127 Kan. 188, 272 Pac. 189; *Alber v. Kansas City,* 138 Kan. 184, 25 P. 2d 364.

Both drainage districts and counties are given wide authority by statute to enter into contracts with reference to the legitimate field of their operation. Some of the powers of drainage districts are set out in G. S. 1935, 24-407. This section reads, in part, as follows:

*"Fourteenth:* To contract with other drainage districts or with public corporations organized for similar purposes in any adjoining state for coöperation or joint action in constructing levees along the banks or otherwise improving any natural watercourse to prevent its overflow where the same overflow is likely to cause injury or damage to lands situated within the territorial limits of all the districts or corporations so coöperating; also to so contract and coöperate with private corporations and individuals owning lands situated outside of the district or state which are subject to injury by such overflow in common with lands situated within the district; also to contract for and receive aid and contributions from the United States, and from all public corporations the property within which will be benefited and with all private corporations and individuals whose property will be benefited by such improvement, whether such property be situated within the district or within some other district or state.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

*"Sixteenth:* To do all other acts that may be necessary to carry out and

execute the general powers hereinbefore or hereinafter granted, although not hereinbefore specially enumerated. . . . "

Also, note G. S. 1935, 24-408, which provides, in part, as follows:

"*Third*, to contract or otherwise coöperate with any city or other municipal corporation in which the same may be situated, or with any corporation or person, for the construction and maintenance of sewers, drains, or ditches for the drainage of any drainage district or portion thereof, or to prevent the same from being overflowed by surface water from adjoining lands, and to levy taxes and issue bonds in accordance with and subject to the provisions of chapter 215 (*), of the Session Laws of 1905, and acts amendatory thereof, to pay for the cost of such improvements."

Counties are given broad powers with reference to constructing drains and ditches necessary in road construction. (See G. S. 1935, 68-115.) These provisions must be construed to confer on county commissioners the authority to enter into contracts such as we have here to extend beyond the term of office of the particular officials who made the contract. Were it not so no comprehensive program of road building could ever be carried out.

The judgment of the trial court is affirmed.