No. 40,375

ANDERSON CATTLE COMPANY, a Corporation, *Appellee,* v. THE KANSAS TURNPIKE AUTHORITY, *Appellant.*

(308 P. 2d 172)

Opinion filed March 9, 1957.

*Robert M. Cowger,* of Topeka, argued the cause; *Thomas W. Cunningham,* of Topeka, and *James W. Putnam,* of Emporia, were with him on the briefs for appellant.

*Dale A. Spiegel,* of Emporia, argued the cause; *Archie T. MacDonald* and *Russ B. Anderson,* both of McPherson, were with him on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This action comes before the court on an appeal from an order overruling a demurrer to the petition of the plaintiff, appellee herein.

The Anderson Cattle Company, appellee, will be referred to as plaintiff and The Kansas Turnpike Authority, appellant, will be referred to as defendant throughout this opinion.

The action against The Kansas Turnpike Authority, which is the subject of this appeal, is an outgrowth of an action filed against joint defendants, namely The Kansas Turnpike Authority and a partnership consisting of Lester W. Servis, L. M. VanDoren, and Stuart Hazard, doing business as Servis, VanDoren, and Hazard. After all defendants had entered a general appearance in the action filed in the district court of Lyon County, the trial court sustained their demurrers on the ground that misjoinder of causes of action existed, and ordered that separate actions be docketed under the provisions of G. S. 1949, 60-709. Subsequent actions were filed and docketed as separate actions, and no further service obtained upon the defendants.

The petition of the plaintiff arising therefrom against The Kansas Turnpike Authority, omitting the caption and prayer, reads:

"1. That the plaintiff is a corporation organized under the laws of the State of Kansas, with its principal place of business in Emporia, Lyon County, Kansas;

"2. That the defendant is a body politic and corporate engaged in building a toll road and turnpike across the State of Kansas, through Lyon County and across Section 6, Township 19 South, Range 11 East of the 6th P. M., in Lyon County, Kansas;

"3. That prior to the 22nd day of April, 1955, and on various dates in the months of October and November, 1954, the defendant, its authorized agents and employees entered upon the land and premises above described for the purpose of making surveys, soundings, drillings, and examinations;

"4. That the defendant, its authorized agents and employees did, in going

upon said lands and premises, caused damage to the personal property of the plaintiff, such personal property being 352 head of cattle, and that said damage was caused by molesting, annoying and exciting said cattle by the presence of the agents and employees of the defendant, by operation of machines and drills, and by creation of noise and motions of the defendant's agents and employees;

"5. That as a result of said action by the defendant, its agents and employees, said cattle were excited and agitated and were frightened and caused to run and were caused to lose weight by reason of failure to eat and rest in the ordinary and customary manner and were thereby damaged by loss of weight and decline in quality in the amount of $6,000;

"6. That the defendant would not and could not restore or repair the damage thus caused and has failed, neglected and refused to pay adequate compensation for said damage and that by reason thereof, there remains due and owing to the plaintiff from the defendant, the sum of $6,000."

The defendant, Kansas Turnpike Authority, then entered a special appearance for the purpose of showing to the court (*a*) that no service whatsoever had been had upon the defendant, and (*b*) that the court was without jurisdiction, the only proper jurisdiction being in the County of Shawnee. The trial court overruled the special appearance, and from this ruling no appeal was taken to this court.

The defendant then demurred to the plaintiff's petition and interposed two points:

"1. That the court has no jurisdiction of the person of the defendant, or the subject of the action.

"2. That the petition does not state facts sufficient to constitute a cause of action."

The trial court overruled this demurrer, and the *defendant appeals only from the order overruling the demurrer.*

Of interest, although not material herein, is the admission of parties in the argument of this case that the plaintiff was a lessee in possession of the lands described in the plaintiff's petition, and that the cattle owned by the plaintiff were being intensively fed concentrated feeds on a portion of the land through which the turnpike was eventually constructed. The record before this court is absolutely silent as to whether or not there was a condemnation of the land described in the plaintiff's petition or of the leasehold interest of the plaintiff therein.

What is the proper venue of actions against The Kansas Turnpike Authority? In view of the record before this court, it is unnecessary to give a complete answer to this question. Of particular importance on this point is the fact that no appeal was taken by The Kansas Turnpike Authority from the order overruling its

special appearance in the lower court. No appeal having been taken from this order, the specific questions raised in the special appearance are not presented for appellate review. (G. S. 1949, 60-3306; *Pennington v. Kansas Turnpike Authority,* 180 Kan. 638, 305 P. 2d 849; *Rierson v. Southern Kansas Stage Lines Co.,* 146 Kan. 30, 69 P. 2d 1; *Nicholas v. Latham,* 179 Kan. 348, 295 P. 2d 631.)

Analyzing the venue question presented by the demurrer, it must be observed that the petition, when tested by a demurrer admits all facts well pleaded therein to be true, and does not permit examination of facts beyond the written allegations of the pleading itself. The conclusions of law to be drawn from the facts are the prerogative of the court. At no place does it positively appear from the petition that the court has no jurisdiction of the person of the defendant herein unless by reference to the defendant as The Kansas Turnpike Authority such defect becomes apparent in the light of the Kansas Turnpike Act. The defendant contends that The Kansas Turnpike Authority is an arm or agency of the State of Kansas, and that the only place in which it can be sued is at the seat of State Government, that is Shawnee County, Kansas, and in support of this contention cites authorities which have construed the statute applicable to the Kansas Highway Commission.

In *Verdigris River Drainage Dist. v. City of Coffeyville,* 149 Kan. 191, 86 P. 2d 592, this court said:

". . . It has been definitely determined the venue of actions against the commission is in Shawnee county, except as to those matters in which the legislature has specifically provided an action against the commission may be brought elsewhere. (*State, ex rel., v. State Highway Comm.,* 138 Kan. 357, 358, 299 Pac. 955; *Rome Mfg. Co. v. State Highway Comm.,* supra [141 Kan. 385, 41 P. 2d 761]; *Gresty v. Darby,* 146 Kan. 63, 68 P. 2d 649.) Except as to actions for damages resulting from defective highways, we find no specific provision that actions against the commission may be maintained in counties other than Shawnee county. Our concern is not with the wisdom of such legislation, but solely with the interpretation of legislative intent. The commission is an arm of the state. Since the legislature specifically consented only that a certain kind of action might be maintained against it in other counties than in Shawnee, we are forced to conclude it intended other actions against it should be maintained in the courts of the county where its main office and principal place of business was situated. . . ." (p. 194.)

The act establishing the Highway Commission states: G. S. 1949, 74-2002, "That the executive council shall provide suitable offices at Topeka for the commission, where it shall hold regular meetings. . . ."

In view of this statute requiring that the Highway Commission

offices be in Topeka, it necessarily follows that Shawnee County is the proper venue for actions against it, and the basis for the decisions so holding is obviously the statute establishing the office in Topeka.

Conversely, the act creating The Kansas Turnpike Authority does not specifically designate where the office shall be located. G. S. 1955 Supp., 68-2004, provides that The Kansas Turnpike Authority is empowered to "(c) *maintain an office at such place or places within the state as it may designate;*" (Emphasis added.) Where the office is or may be located we are not at liberty to search. Testing the petition, as we must by a demurrer, it is clear that no defect in venue appears from the face of the petition. It follows that as to this action the trial court has jurisdiction of the person of the defendant. Whether the proper venue for actions against The Kansas Turnpike Authority will, in a proper case, be determined by this court to be in the county where The Kansas Turnpike Authority has or may in the future establish its office we do not now decide.

Is The Kansas Turnpike Authority an arm of the State of Kansas and entitled thereby to assert the immunity of the State from suit or process sounding in tort?

Defendant argues at great length on the proposition that it is clothed with immunity in an action such as this because it was created a body politic and corporate and constitutes a public instrumentality. (G. S. 1955 Supp., 68-2003.) Similar argument was made in *Pennington v. Kansas Turnpike Authority,* supra.

All statutes involving The Kansas Turnpike Authority are to be found in G. S. 1955 Supp., 68-2001 to 68-2029, inclusive. The specific provisions material for our consideration herein are:

(*a*) "All private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act." (G. S. 1955 Supp., 68-2015.)

(*b*) "The authority is hereby authorized and empowered to: . . . (*d*) sue and be sued in its own name, plead and be impleaded;" (G. S. 1955 Supp., 68-2004.)

While it is true that The Kansas Turnpike Authority is an arm or agency of the State of Kansas, created by the legislature to perform an essential governmental function for the people of the State of Kansas (G. S. 1955 Supp., 68-2013; *State, ex rel., v. Kansas Turnpike*

*Authority*, 176 Kan. 683, 273 P. 2d 198), it does not follow that The Kansas Turnpike Authority is immune from suit in an action such as alleged in plaintiff's petition. The language of the Turnpike Act set forth in (*a*) above is plain and unambiguous and is clearly intended to establish a special statutory right of action against The Kansas Turnpike Authority for all *private* property damaged or destroyed in carrying out the powers granted by the Act.

The powers granted by the Act embody the construction of modern express highways or super-highways to promote the agricultural and industrial development of the state, and The Kansas Turnpike Authority is authorized and empowered to construct, maintain, repair and operate turnpike projects, and to issue revenue bonds of the authority, payable solely from revenues, to finance such projects. (G. S. 1955 Supp., 68-2002.) A grant of general powers is provided in the Act to confer such incidental powers as are necessary to accomplish the primary purposes. (G. S. 1955 Supp., 68-2004 and 68-2005.)

Let us direct our attention now to the Act wherein specific reference is made to *"all private property"*. The legislative intent as garnered from the plain and literal interpretation of this language compels the conclusion that the phrase is neither burdened with a limitation as to the nature or kind of property, nor is it burdened with a limitation as to the manner in which such property may be affected by The Kansas Turnpike Authority. Whether the private property damaged or destroyed in carrying out the powers conferred upon The Kansas Turnpike Authority is personal property or real property is immaterial. The phrase *"all private property"* is all inclusive of private property.

The Act further requires that for all such private property *"damaged or destroyed"* adequate compensation shall be made out of funds provided under the authority of the Act. To hold that the section of the Act set out at (a) above confirms a right of action in tort would be tantamount to reading language into the Act which is not there. The terms "damaged or destroyed" have no antecedent or subsequent modifiers which sound in tort. To alter the plain meaning of this section of the Act would be judicial legislation and this court is without authority to legislate.

We are not without precedent authority in analogous cases which construe the legislative act creating the Kansas Highway Commission. In *State, ex rel., v. State Highway Comm.*, 138 Kan. 913, 917, 28 P. 2d 770, this court said:

". . . By our constitutional provision (art. 11, § 8) it is the state which is authorized to construct and maintain a state system of highways. By chapter 225 of the Laws of 1929 the legislature created a highway commission to perform those state funcitons and provided funds for that purpose. It declared the commission 'shall be a body corporate with power to sue and be sued,' thus making it a quasi-corporate body to carry forward the work for the state of constructing and maintaining a state system of highways. (*McCandliss Construction Co. v. Neosho County Comm'rs*, 132 Kan. 651, 296 Pac. 720; *Payne v. State Highway Comm.*, 136 Kan. 561, 16 P. 2d 509.) The state has given its consent to be sued by an action against the state highway commission with respect to contracts it is authorized to make or was required to take over. It also has given its consent to be sued for damages under certain circumstances by an action against the state highway commission. (R. S. 1931 Supp. 68-419.) But the state has not given its general consent to be sued for all purposes. (*Barker v. Hufty Rock Asphalt Co.*, 136 Kan. 834, 18 P. 2d 568.) The state highway commission is therefore acting for the state in all of its activities authorized by statute for the construction and maintenance of state highways. . . ."

The legislative acts creating the Kansas Highway Commission and The Kansas Turnpike Authority are analogous in that each is designated a body corporate and each confers upon its respective agency the power to sue and be sued, thus making it a quasi-corporate body to carry forward the work of the state pursuant to the powers granted. The State of Kansas by the State Highway Commission Act has given its consent to be sued by an action against the State Highway Commission with respect to contracts it is authorized to make or was required to take over. It also has given its consent to be sued for damages under certain circumstances by an action against the State Highway Commission. This authorization by the state legislature giving consent that a state agency may be sued under circumstances limited by the act creating such agency has been held proper. But the state by such legislative enactment has not given its general consent to be sued for all purposes. (See cases cited in *State, ex rel., v. State Highway Comm.*, supra; also *Verdigris River Drainage Dist. v. City of Coffeyville*, supra, and cases cited therein.)

Similarly the Kansas Turnpike Act waives immunity from suit for actions growing out of damage or destruction to all private property in carrying out the powers granted to The Kansas Turnpike Authority by the act. The requirement that compensation for such damage or destruction be made *"out of funds provided under the authority of this act"* contemplates that the action shall be brought against The Kansas Turnpike Authority. But the state has not by

the Turnpike Act given its general consent to be sued for all purposes. In this respect the Act is similar to the Act creating the Kansas Highway Commission.

This court in discussing the constitutionality of the Turnpike Act in *State, ex rel., v. Kansas Turnpike Authority,* supra, recognized that at no place in the act is there any waiver of the state's immunity from tort liability. This is not at variance with the action before the court because the petition under consideration does not seek recovery upon a theory of tort liability but upon a statutory right of action created by the Act.

The plaintiff suggests that there is some language in *State, ex rel., v. Kansas Turnpike Authority,* supra, which indicates that The Kansas Turnpike Authority enjoys governmental immunity and requests that the real meaning of such language be clarified. In that case, after discussing the constitutional provision which specifically prohibits the state from contracting a debt unless the proposed law for creating the debt shall be first submitted to a direct vote of the electors, the following remarks were made:

"The State's contention that the creation of the Authority as a body corporate and politic with power to sue and be sued constitutes a waiver of immunity cannot be upheld, and unless it be upheld, there is no basis for a contention that a judgment against the Authority would constitute a debt of the state." (p. 691.)

The foregoing statements by this court were broad and general and applied to the constitutional considerations then before the court relative to debts contracted by the state. What was said in substance is that the creation of the Authority as a body corporate and politic with power to sue and be sued did not constitute a waiver of the state's immunity from suit for all purposes. To this we adhere.

It is axiomatic that every wrong must be capable of redress by a remedy. The legislative intent to define the act committed by the defendant as a wrong is clear beyond any doubt. Consequently it must be implied that the statute recognizes a remedy. The remedy is a statutory one, such as has been asserted and alleged by the plaintiff in its petition which is framed in the words of the statute. (*Board of Education v. Scoville,* 13 Kan. 17, 24; *Miller v. Clark,* 62 Kan. 278, 62 Pac. 664; *Weber v. Railway Co.,* 69 Kan. 611, 613, 77 Pac. 533.)

The rule is set forth in 1 Am. Jur. 410, Actions, Sec. 11 and 12, as follows:

"When a new cause of action is created by a statute or a new remedy is provided by statute to enforce a common-law cause of action, it becomes important to determine how the new cause of action shall be enforced, or whether the new remedy supplants the pre-existing common-law remedy. As to the enforcement of a general liability created by statute and unknown to the common law, the rule is that if no remedy is provided by the statute, it may be enforced by an appropriate common-law action, a definite statutory prohibition of conduct indicating an intention that the right conferred shall be enforceable by legal proceedings. An action predicated upon a liability or to enforce a new remedy created or given by a statute must come within the terms of such statute. Limitations placed on a liability thus created become a part of the right conferred, and compliance with them is made essential to the assertion and benefit of the liability itself. Such an action created by statute can be maintained only for the benefit of the persons specified in the statute, and only for the recovery of such damages and against such persons as are contemplated by it. . . ."

The law on this point in the Federal Courts has been more clearly defined. We summarize this law with approval. Courts do not require explicit statutory authorization for familiar remedies to enforce statutory obligations. (*Texas & N. O. R. Co. v. Ry. Clerks,* 281 U. S. 548, 74 L. Ed. 1034, 50 S. Ct. 427; *Virginian Ry. v. Federation,* 300 U. S. 515, 81 L. Ed. 789, 57 S. Ct. 592; *Deckert v. Independence Corp.,* 311 U. S. 282, 85 L. Ed. 189, 61 S. Ct. 229.) When the legislature has left the matter at large for judicial determination, the court's function is to decide what remedies are appropriate in the light of the statutory language and purpose and of the traditional modes by which courts compel performance of legal obligations. (See *Board of Comm'rs v. U. S.,* 308 U. S. 343, 351, 84 L. Ed. 313, 60 S. Ct. 285.) If civil liability is appropriate to effectuate the purposes of a statute, courts are not denied this traditional remedy because it is not specifically authorized. (*Texas & Pacific Ry. v. Rigsby,* 241 U. S. 33, 60 L. Ed. 874, 36 S. Ct. 482; *Steele v. L. & N. R. Co.,* 323 U. S. 192, 89 L. Ed. 173, 65 S. Ct. 226; *Tunstall v. Brotherhood,* 323 U. S. 210, 89 L. Ed. 187, 65 S. Ct. 235; *De Lima v. Bidwell,* 182 U. S. 1, 45 L. Ed. 1041, 21 S. Ct. 743.)

Another theory upon which the defendant relies to support its demurrer is that the petition asserts damages that are wholly consequential and not recoverable. The argument on this point assumes that the statutory provisions heretofore quoted at (a) are predicated upon an actual or physical *appropriation* of property. What has already been said in construing the legislative intent and meaning of the words "all private property damaged or destroyed in carrying out the powers of this act" will suffice. Moreover, the

consequential damage doctrine (where there is no actual appropriation of any property the owner is not entitled to claim damages for merely incidental, indirect and consequential injuries which his property may sustain) pertains only in the absence of a statute authorizing redress for such damages. Since we here have a definite statute the contention of the defendant is without merit.

Defendant contends further that any action pursuant to the section of the act before us must affirmatively show that an attempt was made, or that an opportunity was given, for compliance with that part of the section which contemplates a repairing or restoring to its original condition any property damaged or destroyed before the right to recover money in lieu thereof accrues. The plaintiff by the last paragraph of its petition has alleged all that is required. What more could plaintiff do in the petition after alleging the facts that its fattening cattle had lost weight by reason of defendant's activities?

From what has been said it follows that the lower court has jurisdiction of the subject matter of the action and that the plaintiff has alleged facts sufficient to state a cause of action. The order of the lower court which overruled the demurrer of the defendant is affirmed.