No. 42,025

Kansas Turnpike Authority, *Appellant,* v. M. W. Watson, d/b/a M. W. Watson, General Contractor, *Appellee.*

(371 P. 2d 119)

Opinion filed May 5, 1962.

*Bruce Works,* of Topeka, and *William P. Timmerman,* of Wichita, argued the cause, and *Dale Spiegel,* of Emporia, was with them on the briefs for the appellant.

*Herbert A. Marshall,* of Topeka, argued the cause, and *Allen Meyers,* and *Doral H. Hawks,* both of Topeka, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Robb, J.: This is an appeal by the Kansas Turnpike Authority, plaintiff below, from the orders of the trial court sustaining defendant's demurrer and overruling defendant's objection to plaintiff's evidence, as well as from the judgment in favor of the defendant and the order overruling plaintiff's motion for new trial.

This action commenced by the authority against Watson was based purely upon a contract entered into by the authority and Watson on April 15, 1955 (attached as exhibit "A") whereby Watson agreed:

"(a) To restore any damaged private property at his own expense; and

"(b) To assume all risk and liability for damage that may occur to property during the prosecution of the work under said contract by reason of negligence and carelessness of himself, his agents or employees; and to assume all direct or indirect damages that may be suffered or claimed on account of any construction or improvement; and

"(c) That payment or acceptance of his work by plaintiff would not be taken as a waiver of plaintiff's right to demand and recover from defendant such damages as may be sustained by reason of defendant's failure to comply with the aforesaid contract and specifications; and

"(d) To carry public liability and property damage insurance to protect the public from damage and injury resulting from his work done under said contract, and to file with plaintiff a certificate of such insurance issued by an insurance company authorized to do business in this state; that such a certificate of insurance was filed pursuant to defendant's contract with plaintiff and a copy of that certificate is attached hereto as Exhibit 'B'."

### The contract bond provided:

"The Principal ......... shall fully indemnify, compensate and pay the said Kansas Turnpike Authority for any and all loss, cost, damage or expense, which it may suffer, or be held responsible for, by reason of any negligence, defective condition, default, failure or miscarriage in the performance of said contract, whether by said Principal, sub-contractor or otherwise. . . ."

### The proposal provided:

"All work to comply with the Standard Specifications for State Road and Bridge Construction, Edition 1955, of the State Highway Commission of Kansas, and all Supplemental Specifications and Special Provisions included herein."

### The standard specifications were:

"7.11. PRESERVATION AND RESTORATION OF PROPERTY, ETC.—The Contractor shall be responsible for the preservation of all public and private property, trees, monuments, etc., along and adjacent to the roadway; shall use every precaution to prevent damage or injury thereto; . . . When or where any direct or indirect damage or injury is done to public or private property by or on account of any act, omission, neglect or misconduct in the execution of the work, or in consequence of the nonexecution thereof on the part of the Contractor, such property shall be restored by the Contractor and at the Contractor's expense to a condition similar or equal to that existing before such damage or injury was done, by repairing, rebuilding or otherwise restoring same, or he shall make good such damage or injury in an acceptable manner."

Finally, the provision covering responsibility for damage claims read:

"7.13. RESPONSIBILITY FOR DAMAGE CLAIMS—The Contractor shall assume all risk and liability for accidents and damages that may occur to persons or property during the prosecution of the work, by reason of negligence or carelessness by himself, his agents or employees, and shall assume also all direct or indirect damage that may be suffered or claimed on account of any such construction or improvement. . . ."

The petition further alleged that an action was filed against the authority in November, 1956, by Carl J. Lynch wherein Lynch claimed certain damages, which petition was also attached as an exhibit to the petition in our present case. The action by Lynch was

based on the statutory liability of the authority under G. S. 1957 Supp., 68-2015, which in pertinent part provides:

"All private property damaged or destroyed in laying out and constructing said turnpike project shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefore out of funds provided under the authority of this act."

See, also, *Pennington v. Kansas Turnpike Authority*, 180 Kan. 638, 639, 305 P. 2d 849; *Anderson Cattle Co. v. Kansas Turnpike Authority*, 180 Kan. 749, syl. ¶ 4, 308 P. 2d 172; *Hosterman v. Kansas Turnpike Authority*, 183 Kan. 590, syl. ¶ 1, 331 P. 2d 323.)

That action was for damages to Lynch's house and cattle proximately caused by the use of explosives in the construction of the turnpike. Lynch made no mention of Watson in his petition. The authority's answer in that case contained the following statement:

". . . that if, in truth and in fact, the property of plaintiff as described in plaintiff's petition, was damaged by reason of acts or shocks and explosions caused by the use of dynamite or other explosives in connection with the construction of the Kansas Turnpike at or near said premises, said acts were carried out by, said explosives were used by, and said damage was caused by the independent contractor, M. W. Watson, doing business as M. W. Watson, Contractor, 1004 National Bank Building, Topeka, Kansas, who had the construction contract with the Kansas Turnpike Authority at the time and place alleged in plaintiff's petition and designated as Project No. 6-23-E(1); that in its said contract with the Kansas Turnpike Authority, said contractor agreed to be responsible for any and all such damage as alleged in plaintiff's petition and agreed to protect the public from damage and injury resulting from its construction work."

The authority moved to make Watson an additional party defendant for the reason that he was a necessary and indispensable party for the complete adjudication of the issues; that he was the real party in interest since he contracted with the authority to protect the public from damage and injury by reason of his construction work and his inclusion would prevent multiplicity of actions.

The court order making Watson a party defendant after stating that the court "being advised that plaintiff has no objection to said motion" continued in pertinent part:

". . . that M. W. Watson, doing business as M. W. Watson Contractor, is the real party in interest herein by reason of its having contracted with the Kansas Turnpike Authority to protect the public from damage and injury by reason of its construction work on the Kansas Turnpike; that M. W. Watson, doing business as M. W. Watson Contractor should be made an additional party defendant herein in order to prevent the multiplicity of legal actions."

Watson demurred to "plaintiff's *Petition* herein on the ground that the *pleadings* herein do not state a cause of action" against him and in favor of Lynch. (Our emphasis.) This demurrer was sustained by the trial court on May 29, 1958, and no appeal was taken therefrom. At the end of the hearing of all the evidence, Lynch was awarded $300.00 damages to his house, $2,700.00 damages to his cattle, and the trial court made the following conclusion of law:

"Such damages having been caused solely and proximately by the negligence and carelessness of M. W. Watson, doing business as M. W. Watson Contractor, an independent contractor of the Kansas Turnpike Authority in connection with the construction of the Kansas Turnpike, the defendant, Kansas Turnpike Authority is liable to plaintiff herein by reason of the statutory liability imposed by Section 68-2015, G. S. 1957 Supplement."

Certain letters were attached to the authority's petition in our present case which, in brief, conveyed the following information:

Exhibit C dated April 4, 1958, was written to Watson by the authority's counsel and notified Watson of Lynch's suit for damages against the authority. Carbon copy was sent to Watson's insurance carrier, Western Casualty & Insurance Company, Fort Scott, Kansas.

Exhibit D dated April 8, 1958, was a letter from Watson to the authority's counsel stating he had referred counsel's earlier letter to his insurance carrier.

Exhibit E dated June 2, 1958, was final notice to Watson that the trial date of the Lynch case was set for Friday, June 6, 1958, and informed Watson the authority had no witnesses with which to make a defense and Watson's refusal to defend would force the authority to sue Watson.

Exhibit F dated June 13, 1958, informed Watson of the judgment that had been rendered against the authority and because of Watson's refusal to defend, which he was duty bound to do under his contract, the authority would be forced to file an action to recover the amount of $3,393.96 if not reimbursed therefor by June 30, 1958.

After the hearing in our present case of the testimony of Watson's two witnesses, Kenneth W. Comfort and Floyd J. Williams, the former being an employee of Watson and the latter an employee of Perry Jones who, according to the testimony of these two witnesses, was a subcontractor of Watson and the one who had actually done the blasting, it became apparent that Watson did have important witnesses and the only witnesses who could have been produced who would have presented any defense in favor of the authority and against Lynch in his prior action for damages. The fact that Watson had the only defense witnesses who could have been any assistance to the authority in the Lynch action but that these witnesses were not known to the authority is further born out by exhibit E in which the authority notified Watson of the date of trial and further stated:

"You should realize it is difficult for KTA to defend this case at this time since we have no knowledge of potential witnesses who worked for you since you did the actual construction of this road as an independent contractor."

Obviously, the authority had no knowledge at the time exhibit E dated June 2, 1958, was written that Watson had had a subcontractor, named Perry Jones, who actually had conducted the work involving the explosions and blasting alleged to have caused Lynch's damages.

Watson contends there was collusion with respect to the $3,000 judgment because the authority had drawn a journal entry of judgment in that amount prior to the trial, which had been approved by Lynch and the authority, and that collusion is the only inference to be drawn from such a circumstance. However, we cannot separate the fact that the judgment was for $3,000, although Lynch had sued for $3,600, from the fact that due to Watson's refusal to defend as the authority requested, the authority was left barren of any defensive matter in the Lynch case, which would normally have resulted in Lynch getting the amount he sued for, or the sum of $3,600. We think the inference here is not collusion but that the authority made the best settlement it possibly could when it had no defense to the action.

Watson's next theory, and the one which seemed to be convincing to the trial court, was that the sustaining of Watson's demurrer directed to plaintiff's petition in the Lynch case, even though it stated that the *pleadings* did not state a cause of action against this defendant and in favor of plaintiff, was *res judicata* and absolved Watson from any and all liability. The position of the trial court was made quite apparent from its letter to counsel in this case, the pertinent portions of which are:

"I think that once Mr. Watson was made a party defendant in that case upon motion of the Kansas Turnpike Authority, and pleadings filed attempting to fix a liability on Watson for the damage, that then Mr. Watson was a party defendant for not only the issues which were tried but also for any issue which might have been tried as indicated by the pleadings.

"In that case defendant Watson filed a demurrer to the petition of the plaintiff for the reason that the *pleadings* in that case did not state a cause of action against Watson. The Turnpike Authority could have appealed from that ruling of the trial court but saw fit to let the ruling stand, and for that reason I think the Turnpike Authority is bound by the proceedings in that case.

"In addition to all of this, the judgment in the Lynch case was almost an agreed affair, the parties having stipulated to practically all of the facts upon which Mr. Lynch relied. There was some evidence in that case that Watson

may have been responsible for the blasting complained of, but in this case the witnesses for the defendant, who were the actual parties doing the blasting, testified that another party other than Mr. Watson did the blasting. There may be some question as to the responsibility between Watson and the other subcontractor who was guilty of the blasting, but I do not think that that question materially affects the decision in this case because as indicated before, I think the rulings in the Lynch case are *res judicata* and settled."

Although the authority raises six specifications of error, the fourth presents the major question here on appeal and that is whether the trial court erred in permitting the Lynch case to be reopened and retried in this action from which arose Watson's contention that the sustaining of his demurrer in the Lynch case was *res judicata* in this case.

Both parties cite and rely on *McDonald v. Joint Rural High School District No. 9*, 180 Kan. 563, 306 P. 2d 175, where the four elements necessary to establish *res judicata* are set out as follows:

"(1) Identity of the thing sued for (2) identity of the cause of action (3) identity of persons and of parties to the action and (4) identity of the quality in the persons for or against whom the claim is made." (p. 567.)

The authority contends the four elements are lacking herein while Watson contends they are present and Watson also wishes to take advantage of the following statement from the McDonald case:

". . . not only are the issues chosen to be litigated finally determined but every other issue incidental thereto which could have been properly adjudicated therein is likewise determined." (p. 567.)

Considering the first required element, damages were sought in the Lynch case, as well as in our present case, and that requirement is, therefore, satisfied. As to element (2), the cause of action in the Lynch case was based on statutory liability and in our case liability was based upon the contract between the authority and Watson for himself but also for his subcontractors. Therefore, identity of the cause of action is not present. We might pause here to say that under the contract between the authority and Watson, Lynch may have had a cause of action under a third party beneficiary theory, which subject was very ably discussed in *Anderson v. Rexroad*, 175 Kan. 676, 680, 266 P. 2d 320, but he did not see fit to pursue that remedy.

Lynch sued the authority under a statutory cause of action and recovered a judgment against the defendant authority thereon and under the statute (G. S. 1957 Supp., 68-2015) the authority had

to satisfy the judgment. While the authority as defendant undertook in that action to include a third party beneficiary liability contract with Watson by having Watson made a party defendant, all of this was no defense in favor of the authority against Lynch's statutory cause of action. (*Anderson v. Rexroad*, 178 Kan. 227, 230, 284 P. 2d 1077.) It should perhaps be stated that Lynch had no duty to wait in his lawsuit until everybody who might be liable to the authority had their rights litigated against the authority, or vice versa. For these reasons, *res judicata* cannot be claimed since all four elements were not present, and that being true, Watson's second contention that every other issue which could have been litigated presupposed these four elements existed, as set out in the McDonald case above quoted, is likewise not tenable.

While there seems to be no controversy over the remaining question in regard to Watson's duty to defend the authority under his contract with the authority, since he based his principal contention on the proposition that the ruling on his demurrer in the Lynch case was *res judicata* to this case, it is quite clear that when Watson was notified of the pendency of the action, the setting of the trial, and finally of the trial and judgment, and also that the authority was looking to him for recoupment of its loss by reason of the judgment and expenses in the case, Watson had the duty first to defend the authority, and upon his refusal so to do, he made himself liable not only for the amount of the judgment but also for the expenses of court costs and attorney fees. This has been the rule of this court in many cases including *City of Topeka v. Ritchie*, 105 Kan. 398, 184 Pac. 728, and *City of McPherson v. Stucker*, 129 Kan. 262, 282 Pac. 703, where it was said:

"It may be stated as a general rule that when a party is sued in an action and the circumstances are such that a third party is liable over to defendant in the event defendant is liable to plaintiff, and defendant notifies the third party of the action and requests him to defend, but he declines to do so, and the action proceeds to trial, resulting in a judgment against defendant, which he satisfies, and then seeks to recover from the third party, such third party is concluded by such judgment as to all material questions determined therein." (p. 266.)

Another similar case is *Olmstead v. Fidelity and Deposit Co.*, 138 Kan. 825, 28 P. 2d 722, where it was also said:

"It therefore appears that defendant's contentions on this point are untenable. It was by its own choice that defendant refrained from participating in the earlier litigation. It had ample notice of it and of its possible consequences

to the man to whom it had bound itself to save harmless from all outlay and expense to which he might be subjected on account of the contractual delinquencies of the principal on the bond. Moreover, it is now too late for defendant to urge legal points which might have availed it in the earlier litigation." (p. 829.)

See, also, *Anderson v. Rexroad,* 180 Kan. 505, 510, 306 P. 2d 137.

Under the record in this case showing Watson's definite refusal to defend the authority under the contract, which contract is before this court for consideration the same as it was before the trial court, and when by reason of such refusal the authority had a judgment rendered against it, we conclude the trial court erred in entering judgment that the sustaining of a demurrer in the original action between Lynch and the authority was *res judicata* to any and all liability of Watson under the contract whereby he was required to defend the authority and fully indemnify it as shown in the contract bond, the proposal, the standard specifications and the responsibility for damage claims heretofore set out.

Reversed.