No. 43,480

LARRY G. MILLER, *Appellee*, v. THE KANSAS TURNPIKE AUTHORITY, *Appellant.*

(392 P. 2d 89)

Opinion filed May 9, 1964.

*George B. Powers* and *William P. Timmerman,* both of Wichita, argued the cause, and *George D. McCarthy, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Robert L. Howard,* and *Charles J. Woodin,* all of Wichita, were with them on the briefs for the applelant.

*Keith E. Sanborn* and *Vincent L. Bogart,* both of Wichita, argued the cause, and *William P. Higgins,* of Wichita, was with them on the briefs for the appellee.

*Harry T. Coffman, W. W. Baldock,* and *J. Stephen Jones,* all of Lyndon, were on the briefs *amicus curiae.*

The opinion of the court was delivered by

ROBB, J.: This is an appeal from the trial court's order overruling the demurrer of the Kansas Turnpike Authority attacking plaintiff Miller's amended petition consisting of a first count, sounding in tort for recovery of damages by reason of personal injury and property damage, and a second count, sounding in breach of an implied warranty that the turnpike was suitable and safe for vehicular traffic thereon when operated at fifty-five to sixty-five miles per hour and within the maximum and minimum speed requirements.

Highly summarized, the amended petition alleged in the first count that defendant is an incorporated body politic under G. S. 1959 Supp., 68-2003, and could be served in Sedgwick county. At 2:30 or 3:00 p. m. on April 26, 1961, Miller received a ticket at the east terminal of the turnpike in Kansas City, Kansas, and entered the turnpike to drive to Wichita, Kansas, in his 1955 Plymouth Sedan. At 6:00 p. m. when he was approximately 2.3 miles north-

east of Emporia and .7 miles southwest of mile post 107, the Plymouth came into contact with a slick spot in the road caused by rainfall on the asphalt aggregate roadway, which became slick and hazardous when wet. The Plymouth crossed the highway, overturned, and threw Miller out onto the ground. He had no prior warning of the hazardous condition and there was nothing about the particular portion of the road to put him on warning. Miller was operating the Plymouth lawfully, safely, and prudently at fifty-five to sixty-five miles per hour within the prescribed speed limits. The Authority was negligent in "failing to maintain the Turnpike in proper condition for the use and occupancy for which it was intended" and more particularly for traveling vehicles operating thereon and "by using faulty materials in the construction and/or repair" thereof and by failing to warn motorists, particularly Miller.

Numerous notices of previous accidents in the immediate area as a result of the formulation of wet, slick and hazardous conditions were in the Authority's possession in the form of patrolmen's reports whereby the Authority had both actual and constructive notice of such hazardous condition well prior to this accident.

Then followed the allegations of personal injuries and property damages with which we are not now concerned.

Count two alleged that Miller, by accepting the ticket upon entering the turnpike, obligated himself to pay the toll charge for using the facility and in consideration therefor the Authority impliedly warranted and agreed to furnish suitable and safe highway facilities for the operation of motor vehicular traffic thereon within the posted specified speed limits. The Authority wholly failed, refused and neglected to furnish and maintain the turnpike in a suitable condition for the safe operation of such motor vehicular traffic, thereby causing Miller's injuries.

The Authority attacked this amended petition with a general demurrer because it did not state facts sufficient to constitute a cause of action in favor of Miller and against the Authority, which demurrer was overruled by the trial court and this timely appeal, challenging such order, followed.

In considering the only question here presented, which is the propriety of the trial court's order overruling the Authority's demurrer, we shall briefly review the pertinent legislative history and our opinions interpreting those portions of the Kansas Turnpike Act.

The Authority is a creature of the statute (G. S. 1961 Supp., 68-2001) which reads in part:

". . . (a) The word 'authority' shall mean the Kansas turnpike authority, created by section 3 [68-2003] of this act, or, if said authority shall be abolished, the board, body or commission succeeding to the principal functions thereof or to whom the powers given by this act to the authority shall be given by law."

As was stated in *Anderson Cattle Co. v. Kansas Turnpike Authority*, 180 Kan. 749, 755, 308 P. 2d 172, at the time the Authority was created the Kansas Turnpike Act specifically waived immunity from suit for actions growing out of damage or destruction to all private property *in carrying out the powers granted to the Authority* by the act. See, also, *Pennington v. Kansas Turnpike Authority*, 180 Kan. 638, 639, 305 P. 2d 849, where it was stated:

"The K. T. A. argues at great length on the proposition that it was clothed with immunity from a suit such as this because it was created a body politic and corporate and constitutes a public instrumentality. (G. S. 1955 Supp., 68-2003.) Provision is made in G. S. 1955 Supp., 68-2004 (d) that the K. T. A. may sue and be sued in its own name, plead and be impleaded. Provision is also made that any private property damaged or destroyed by K. T. A. shall be restored, repaired or placed in its original condition as nearly as practicable or adequate compensation made therefor. (G. S. 1955 Supp., 68-2015.) Thus it can plainly be seen that the contention of K. T. A. as to immunity must fail. (*State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 691, 273 P. 2d 198.)" (p. 639.)

To the same effect as to the statutory cause of action provided for in G. S. 1955 Supp., 68-2015 were *Wilson v. Kansas Turnpike Authority*, 181 Kan. 1025, 1028, 317 P. 2d 843 and *Hosterman v. Kansas Turnpike Authority*, 183 Kan. 590, Syl. ¶ 1, 331 P. 2d 323.

G. S. 1955 Supp., 68-2015 that controlled as late as the Hosterman case in pertinent part provided:

"All private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act."

But in 1957 after the Pennington and Anderson cases were handed down, the legislature saw fit to amend 68-2015 so that it now provides:

"All private property damaged or destroyed *in laying out and constructing* said turnpike project shall be restored or repaired and placed in its original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act." (Our emphasis.)

We were thereafter called upon again to determine the sufficiency

of a petition under attack by general demurrer in *Kansas Turnpike Authority v. Watson*, 189 Kan. 593, 596, 598, 371 P. 2d 119. In an earlier action brought by Carl J. Lynch against the Authority for damage to his house and cattle alleged to have been caused by the negligent blasting of M. W. Watson, a general contractor, *in the construction of the turnpike*, the Authority settled the action brought by Lynch and sought indemnity in an action against Watson, and in effect we there stated that a statutory cause of action remained available under G. S. 1957 Supp., 68-2015.

Following the above decisions Miller could neither recover for personal injury under G. S. *1955* Supp., 68-2015 nor under G. S. *1957* Supp., 68-2015, but he may have properly alleged facts sufficient to entitle him to recover for *personal property damages* under G. S. 1955 Supp., 68-2015. However, under G. S. 1957 Supp., 68-2015, the damages to personal property had to be received *"in laying out and constructing"* the turnpike project, which this obviously was not.

The 1957 legislature in clear and unambiguous language restricted the waiver of immunity granted by the 1955 legislature whereby immunity was restored to the Authority and the allegations in Miller's petition did not state a cause of action since his "private property" was not "damaged or destroyed *in laying out and constructing*" the turnpike project. Therefore, the demurrer to the first count of the petition should have been sustained and the trial court committed reversible error by its order overruling it.

Further, the reasoning applied in the above determination is applicable and controlling with respect to the trial court's order overruling the Authority's general demurrer challenging the sufficiency of the allegations in count II based on the theory of implied contract because such theory was not specified in the statutory cause of action and the trial court, therefore, committed reversible error also in overruling the general demurrer to the second count.

We have not overlooked the argument in the brief *amicus curiae* but our authority to determine the wisdom of this legislation was answered in the Hosterman case. These matters are for legislative and not judicial determination.

We conclude the trial court's order must be reversed as to both portions thereof.

Judgment reversed with directions to sustain the general demurrer to both counts of the petition.

WERTZ, J., dissents.