No. 49,140

J<small>EANETTE</small> F<small>LAX</small>, *Appellant,* v. T<small>HE</small> K<small>ANSAS</small> T<small>URNPIKE</small> A<small>UTHORITY</small>, *Appellee.*

(596 P.2d 446)

Opinion filed June 9, 1979.

*Jerry R. Palmer,* of Stumbo, Stumbo, Palmer, McCallister & Buening, of Topeka, argued the cause and was on the brief for appellant.

*Donald R. Hoffman,* chief assistant attorney general, and *Bob W. Storey,* KTA general counsel, argued the cause, and *Curt T. Schneider,* attorney general, and *Richard R. Rock,* of Arkansas City, were on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Once again the attack upon governmental immunity comes before this court. This time the application of K.S.A. 46-901 to highway defects upon the Kansas turnpike is in question.

Plaintiff filed an action in the district court against the Kansas turnpike authority (KTA) for the wrongful death of her husband and three children as a result of a one car collision on the Kansas turnpike. Plaintiff was driving the family automobile southbound west of the Cassoday exit when her automobile left the road and struck a guardrail. Her husband and three of their children who were passengers were killed. Plaintiff alleged certain defects in the turnpike roadway were the proximate cause of the collision and also alleged the breach of an express warranty that the turnpike met all the federal standards for an interstate highway. The allegation of a breach of warranty was based upon the designation of that portion of the turnpike as being a section of "Interstate 35."

The trial court sustained a motion, pursuant to K.S.A. 60-212(*b*)(6), by the KTA to dismiss the action. The trial court ruled that K.S.A. 46-901 granted immunity to the KTA and further ruled as a matter of law that the claimed express warranty could not be established. This appeal followed.

K.S.A. 46-901 provides:

"(a) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, except as is otherwise specifically provided by statute:
(1) The state of Kansas; and
(2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and
(3) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas.
(b) The immunities established by this section shall apply to all the members of the classes described, whether the same are in existence on the effective date of this act or become members of any such class after the effective date of this act.
(c) The state of Kansas and all boards, commissions, departments, agencies, bureaus and institutions and all committees, assemblies and groups declared to be immune from liability and suit under the provisions of subsection (a) of this section shall, in all express contracts, written or oral, with members of the public, give notice of such immunity from liability and suit."

At the outset we should consider one of appellee's arguments. Appellee contends, and the trial court held, that the issues in this case have been determined adversely to plaintiff's position and are controlled by *Woods v. Kansas Turnpike Authority,* 205 Kan. 770, 472 P.2d 219 (1970). In *Woods* the plaintiff brought an action for personal injury resulting from an automobile accident allegedly caused by a nuisance created by the KTA. The *Woods* accident occurred July 20, 1968, at a time when judicially established governmental immunity existed. In *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969), we abolished, effective August 30, 1969, the previously existing governmental immunity as applied to proprietary functions. The legislature, at its next session, reacted to *Carroll* by passing K.S.A. 46-901 and 902 effective March 26, 1970. (L. 1970, ch. 200, Sec. 1 and 2.) The decision in *Woods* was filed July 17, 1970. The court quoted K.S.A. 46-901 and then stated:

"By this enactment the legislature, in its wisdom, has expressed the public policy of this state in the field of governmental immunity pertaining to the state and its various agencies. The legislature in clear and unambiguous language has declared the Kansas turnpike authority immune from liability on implied contract or for negligence or any other tort, which would include nuisance, except as provided by statute. The law as it now stands remains in harmony with our earlier turnpike cases, namely, that the authority is immune from tort liability except to the extent such immunity is waived by statute. (K.S.A. 68-2015.)

"Certainty and stability in the law are always desirable and in the long run best

serve the bench, the bar and the citizens of the state. Now that the legislature has spoken in a comprehensive manner on the subject of immunity for the state and its agencies - something lacking at the time of *Carroll* - we believe sound judicial policy dictates that further inroads by this tribunal into the immunity doctrine as it relates to liability of the state is neither warranted nor justified. We therefore decline to engraft solely for plaintiff's benefit the nuisance exception to the immunity previously accorded the Kansas turnpike authority under our law as it existed prior to *Carroll*." pp. 773-774.

While it has been argued that *Woods* stands for the proposition that the KTA is immune from suit by reason of the statute, it is clear from the time sequence involved that the reference to the statute was dictum and not controlling of the actual decision. The decision of the court was that the nuisance exception would not be engrafted upon the judicially imposed immunity which existed prior to *Carroll*. The reference to the new statute by the court was in support of its determination not to recognize the nuisance exception to the doctrine.

In *Medford v. Board of Trustees of Park College,*162 Kan. 169, 175 P.2d 95 (1946), this court stated:

"*Dictum* often develops in opinions from comments upon arguments advanced by counsel for the respective parties. *Dicta* and *obiter dicta* which go beyond the case may be respectedbut should not control a judgment in a subsequent case when the precise point is presented, argued and considered by the entire court. . . . Nobody is bound by *dictum* . . . 'not even . . . the court itself when it may be further enlightened by briefs and arguments of counsel and mature consideration and when it becomes a question squarely presented for decision.' (*Putnam v. City of Salina,* 137 Kan. 731, at 733, 22 P.2d 957)." p. 173.

The opinion in *Woods* reflected the court's thoughts on the effect of the new statute but the application of the statute was not an issue in the case and as the statements were dictum they were not determinative of the issues in *Woods* and, being dictum, are not determinative of the issue before us.

Appellant initially argues that as the term "authority"is not included in the statute, the immunity established does not apply to the KTA. She argues further that if the KTA is included within 46-901, then the statute creates an unconstitutional classification resulting in invidious discrimination in violation of the equal protection clauses of both the federal and Kansas constitutions.

In support of her first argument, appellant points out that K.S.A. 46-902, enacted as a part of the same bill as 46-901, specifically includes "authorities" in the statute which provides

that the immunity granted in 46-901 will not apply to local units of government. The statute as originally enacted provided:

"46-902. **Nonapplication to local units of government.** (a) Nothing in Section 1 [46-901] of this act shall apply to or change the liabilities of local units of government, including (but not limited to) counties, cities, school districts, community junior colleges, library districts, hospital districts, cemetery districts, fire districts, townships, water districts, irrigation districts, drainage districts and sewer districts, and boards, commissions, committees, authorities, departments and agencies of local units of government." (1970.)

Appellant further points out that the same legislature enacted K.S.A. 74-4714 dealing with liability insurance wherein "state" was defined as:

"[A]ny agency, board, commission, institution, bureau, authority or department of the state of Kansas."

The classifications in 74-4714 are the same as those in 46-901($a$)(2) except the word "authority" is specifically included. Appellant argues that the 1970 legislature was obviously concerned with the use of the word "authority" when referring to an arm of the state and consequently the exclusion of the term from 46-901 shows an intent that the KTA was not included in the statute.

This court has consistently held that the Kansas turnpike authority is an arm or agency of the state, created by the legislature to perform an essential governmental function. *Woods v. Kansas Turnpike Authority,* 205 Kan. 770, 472 P.2d 219 (1970); *Miller v. Kansas Turnpike Authority,* 193 Kan. 18, 392 P.2d 89 (1964); *Hosterman v. Kansas Turnpike Authority,* 183 Kan. 590, 331 P.2d 323 (1958); *Anderson Cattle Co. v. Kansas Turnpike Authority,* 180 Kan. 749, 308 P.2d 172 (1957); *Pennington v. Kansas Turnpike Authority,* 180 Kan. 638, 305 P.2d 849 (1957); *State, ex rel., v. Kansas Turnpike Authority,* 176 Kan. 683, 273 P.2d 198 (1954). This determination of status is wholly in harmony with K.S.A. 1978 Supp. 68-2003, wherein the authority is designated as follows:

"There is hereby created a body politic and corporate to be known as the 'Kansas turnpike authority.' The authority is hereby constituted a public instrumentality and the exercise by the authority of the powers conferred by this act in the construction, operation and maintenance of turnpike projects shall be deemed and held to be the performance of an essential governmental function."

Although "authorities" are not specifically included in 46-901,

subsections (2) and (3) of section (*a*) are sufficiently broad to include the Kansas turnpike authority. Appellant's first point is without merit.

Appellant's second argument is that the application of 46-901 to highway defects upon the turnpike creates an unconstitutional classification violative of the equal protection clauses of the federal and state constitutions. It would serve no useful purpose to again review the history of governmental immunity in Kansas. For those who may be interested, *Brown v. Wichita State University (Brown I)*, 217 Kan. 279, 540 P.2d 66 (1975), and *Brown v. Wichita State University (Brown II)*, 219 Kan. 2, 547 P.2d 1015 (1976), provide excellent dissertations upon the doctrine, its history and the constitutional questions involved.

When statutes are challenged as unconstitutional, certain principles guide this court's consideration.

"Long-standing and well established rules of this court are that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. Moreover, it is the court's duty to uphold the statute under attack, if possible, rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. (*State, ex rel., v. Fadely*, 180 Kan. 652, 658, 659, 308 P.2d 537; *Wall v. Harrison*, 201 Kan. 600, 603, 443 P.2d 266; *Moore v. Shanahan*, 207 Kan. 645, 651, 486 P.2d 506; and 16 Am. Jur. 2d, Constitutional Law, § 175, pp. 399-401.)" *Leek v. Theis*, 217 Kan. 784, 792-93, 539 P.2d 304 (1975).

With these principles in mind, we must first determine whether a statute apparently valid upon its face may be unconstitutional and invalid as to a specific set of facts, circumstances or classifications.

"It is well settled that a statute may be constitutional as applied to one set of facts and unconstitutional as applied to another. *Dahnke-Walker Milling Co. v. Bondurant*, 257 U.S. 289, 42 S.Ct. 106, 66 L.Ed. 239; *Kansas City Southern R. Co. v. Anderson*, 233 U.S. 325, 34 S.Ct. 599, 58 L.Ed. 983." *Mintz v. Baldwin*, 2 F. Supp. 700, 705 (N.D.N.Y. 1933).

The determination of whether the broad general language of 46-901 is valid when applied to defects in the turnpike requires an examination of the overall legislative and judicial action pertaining to highway defects. Any motorist traveling on any state highway (K.S.A. 1978 Supp. 68-419), county or township road (K.S.A. 68-301), or city street (*Grantham v. City of Topeka*, 196 Kan. 393, 411 P.2d 634 [1966]) has recourse for property damage,

personal injury or death sustained by reason of the failure of the state, county, township or city to properly maintain the highways, roads and streets. Yet it is contended by the appellee that the motorist who elects to travel the most modern super highway in Kansas, and pays a fee for the privilege, has no such right or protection due to the broad general language in K.S.A. 46-901. If the plaintiff Jeanette Flax had been driving on any other public thoroughfare in the State she would not be denied the right to pursue her cause of action and she cannot constitutionally be deprived of that right while traveling on the turnpike.

In *Carroll v. Kittle,* 203 Kan. 841, this court found there was no rational basis for governmental immunity when the governmental body was engaged in a proprietary function and judicially wiped it from the books. In *Carroll* plaintiff brought an action against the members of the Board of Regents of the State of Kansas and others for personal injuries sustained by plaintiff, a private paying patient, while hospitalized at the University of Kansas Medical Center. The trial court sustained a motion to dismiss on the basis of governmental immunity. In reversing the trial court and abolishing the doctrine of governmental immunity when proprietary functions were involved, this court stated:

"It is difficult for the majority of the court to see why one governmental agency performing precisely the same acts - *e.g.,* operating a hospital for profit - should be liable for negligence and others should not." p. 847.

K.S.A. 46-901 and 902 comprise the legislative response to *Carroll* and reestablished governmental immunity for the State of Kansas and its various agencies, etc., for all activities, both governmental and proprietary, while maintaining liability for local units of government. Exceptions to the broad grant of immunity granted the State in 46-901 are found in other legislation.

In the present case, the inconsistency in the application of the doctrine, as now established by legislative action rather than judicial fiat, reaches the ultimate in its discrimination against one small segment of the motoring public. Let us assume Jeanette Flax had entered Kansas coming from Denver, Colorado, on Interstate 70 with a destination of Kansas City. She, and her family, would have been protected from highway defects for over three-fourths of her journey in Kansas. Suddenly, by passing through Topeka and the turnpike tollgate, she loses her protection

for the remaining few miles of her journey without ever leaving the same highway. Damage caused by a highway defect five miles west of Topeka would be compensable while the same damage on the same highway from a similar defect five miles east of Topeka would not.

To paraphrase *Carroll:* It is difficult to see why the state, counties, townships and cities performing precisely the same acts - *e.g.,* the maintenance of a public thoroughfare - should be liable for defective roadways and the Kansas turnpike authority should not.

Legislation adopted by the legislature indicates an intent that the motorists of Kansas shall have recourse for highway defects and the attempt to bring one small segment of the motoring public within the general immunity language of 46-901 constitutes the rankest discrimination. Further indications that the legislature intends that the turnpike motorist should be treated the same as others is borne out by the adoption in 1975 of 75-5012, which attached the Kansas turnpike authority to the department of transportation as a part thereof. K.S.A. 46-901, which appellee contends would deny recovery to the turnpike motorists cannot be constitutionally valid as to that group in view of the other legislation which specifically grants a right of recovery to all other motorists. An attempt to put the turnpike motorist in a class separate and apart from all other motorists will not pass constitutional muster.

As early as 1885, the Supreme Court, in a tax case, stated:

"And it is no objection to the remedy in such cases, that the statute whose application in the particular case is sought to be restrained is not void on its face, but is complained of only because its operation in the particular instance works a violation of a constitutional right; for the cases are numerous, where the tax laws of a State, which in their general and proper application are perfectly valid, have been held to become void in particular cases, either as unconstitutional regulations of commerce, or as violations of contracts prohibited by the Constitution, or because in some other way they operate to deprive the party complaining of a right secured to him by the Constitution of the United States." *Poindexter v. Greenhow,* 114 U.S. 270, 295, 29 L.Ed. 185, 5 S.Ct. 903 (1885).

*Harvey v. Clyde Park Dist.,* 32 Ill. 2d 60, 203 N.E.2d 573 (1964), involved an action on behalf of a minor for injuries alleged to have been caused by the negligence of the defendant park district in maintaining a children's slide. The State of Illinois had adopted numerous statutes establishing governmen-

tal immunities and creating exceptions to them. In discussing discrimination, which might occur by reason of a series of statutes on the same general subject, the court stated:

"The circumstance that the alleged arbitrary discrimination results from a statutory pattern rather than from a single statute has not barred consideration of claims of violation of the equal protection clause of the 14th amendment to the Constitution of the United States, (Gregg Dyeing Co. v. Query, 286 U.S. 472, [52 S.Ct. 631], 76 L.Ed. 1232; *cf.* McGowan v. Maryland, 366 U.S. 420, 423-428, [81 S.Ct. 1101], 6 L.Ed.2d 393; Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U.S. 582, 586-588, [81 S.Ct. 1135], 6 L.Ed.2d 551; Gallagher v. Crown Kosher Super Market, 366 U.S. 617, 618-624, [81 S.Ct. 1122], 6 L.Ed.2d 536,) and we see no reason why that circumstance should bar the plaintiff's claim of discrimination in this case." pp. 64-65.

The defendant relied upon a statute which granted park districts immunity for negligence although other governmental units operating the same type facilities had limited liability or no immunity at all. After reviewing various statutes granting various degrees of immunity in different situations the court stated:

"So far as the present case is concerned, cities and villages, park districts, school districts and forest preserve districts, as well as the State itself, all maintain recreational facilities that are available for public use. If the child involved in the present case had been injured on a slide negligently maintained in a park operated by a city or village there is no legislative impediment to full recovery. If the child had been injured on a slide negligently maintained by a school district, or by the sovereign State, limited recovery is permitted. But if the child had been injured on a slide negligently maintained by a forest preserve district, or, as was actually the case, by a park district, the legislature has barred recovery. In this pattern there is no discernible relationship to the realities of life. We hold, therefore, that the statute relied upon by the defendant is arbitrary, and unconstitutionally discriminates against the plaintiff." pp. 66-67.

The court held that by reason of the pattern established by the series of statutes, the one granting the state park districts immunity was unconstitutional.

In *State v. Smiley*, 65 Kan. 240, 69 Pac. 199 (1902), *aff'd* 196 U.S. 447, 49 L.Ed. 546, 25 S.Ct. 289 (1905), this court recognized the proposition that general language, valid upon its face, may be construed to exclude certain subjects or classes of things in order that the entire statute will not be held unconstitutional:

"Throughout the entire history of English and American law the courts have been ruling that the general words of statutes were to be restrained in import and application whenever the taking of them in literal sense would lead to absurd or hurtful consequences, and the same is true under the American system of written constitutions, whenever the taking of general words in their full signification would expose them to conflict with the organic law." p. 249.

We have no hesitancy in finding that a statute, apparently valid upon its face, may be unconstitutional as to a particular set of facts, circumstances or classifications.

Appellee, contending claims for turnpike defects are barred by 46-901, quotes from *Brown II* three tests or interests which were held to support the legislative classification established by the statutes. They were (1) the necessity to protect the state treasury, (2) allowing government to function without the threat of time and energy consuming legal actions, and (3) protection from high-risk activities.

K.S.A. 68-2001 *et seq.*, as amended, are the statutes which control the Kansas turnpike authority and the construction and maintenance of toll roads within the state. The act contemplates financing by the issuance of revenue bonds and that the maintenance of the turnpike and the retirement of bonds shall be paid solely from revenue generated by the tolls collected from the public for the use of the roadway and not from state funds.

K.S.A. 68-2008 provides in part:

"Revenue bonds issued under the provisions of this act shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision thereof, but all such bonds shall be payable solely from the funds herein provided therefor from revenues."

K.S.A. 1978 Supp. 68-2009 provides for the establishment of tolls for the use of the turnpikes and states in part:

"Such tolls shall be so fixed and adjusted in respect of the aggregate of tolls from the turnpike project or projects in connection with which the bonds of any issue shall have been issued as to provide a fund sufficient with other revenues, if any, to pay (a) the cost of maintaining, repairing and operating such turnpike project or projects and (b) the principal of and the interest on such bonds as the same shall become due and payable, and to create reserves for such purposes.

"Such tolls shall not be subject to supervision or regulation by any other commission, board, bureau or agency of the state."

Thus, it would appear that protecting the interest of the state treasury is not a valid argument in support of granting immunity to the Kansas turnpike authority, which functions free and clear of any obligation to, or receipt of funds from, the state treasury.

To say that the authority must be cloaked with immunity for defective highways because of time and energy consuming legal actions and as a protection from high-risk activities, when the

state and every county, township and city are deemed capable of carrying such burdens, is not persuasive of any great need to single out the Kansas turnpike authority for special treatment and protection.

The ultimate effect of our series of statutes is to create a small class of motorists who are subjected to discrimination for no other reason than they happened to take the turnpike and as a result, are deprived of a remedy granted the motorist on every other road in Kansas. While a majority of the present members of this court would continue, in most situations, to uphold the constitutionality of K.S.A. 46-901, based upon *Brown II* and subsequent cases, it is obvious that the statute cannot be constitutional as applied to turnpike defects. (It might be said in passing that the current session of the Legislature has also recognized the inequities created by governmental immunity, and has seen fit to repeal 46-901 and 902 through the enactment of a tort claims act.) Such a classification is unconstitutionally discriminatory and therefore we hold K.S.A. 46-901 is constitutionally invalid to the extent that it attempts to grant the KTA immunity for damage suffered by any person who shall sustain damage by reason of any defect in the Kansas turnpike, including but not limited to the traffic lanes, acceleration lanes, deceleration lanes, structures, bridges, shoulders, medial strips, and access ramps located within the right-of-way of the Kansas turnpike authority.

While the foregoing would be sufficient to dispose of the other issues on appeal, as the case must be remanded for further proceedings, we deem it appropriate to consider two other matters.

Appellant, as one of her points, argues that the erection and maintenance of "Interstate" highway markers constituted an express warranty that the turnpike conformed to the standards of a federal interstate highway. We conclude that the trial court was correct in its holding as a matter of law that there is no such express warranty to patrons using the turnpike. *Naaf v. Griffitts,* 201 Kan. 64, 439 P.2d 83 (1968); *Adrian v. Elmer,* 178 Kan. 242, 284 P.2d 599 (1955); *Topeka Mill & Elevator Co. v. Triplett,* 168 Kan. 428, 213 P.2d 964 (1950).

In K.S.A. 1978 Supp. 68-419, allowing recovery from the state for highway defects, the legislature has set forth a detailed procedure to be followed in presenting a claim against the state

through the department of transportation. Unfortunately, no such procedure has been established for claims against the KTA and it is not the function of this court to establish such a procedure. Having determined that K.S.A. 46-901 is unconstitutional when applied to the KTA in a turnpike defect case, plaintiff is free to pursue her action as in any other civil case.

The judgment of the trial court is reversed and the case remanded for further proceedings in conformance with the views set forth above.

McFARLAND, J., dissenting in part and concurring in part:
The plaintiff basically raises three issues on appeal:
(1) The state governmental immunity statute (K.S.A. 46-901) does not include the Kansas Turnpike Authority.
(2) If the Kansas Turnpike Authority is included in K.S.A. 46-901, then a constitutionally impermissible classification has been created.
(3) The designation of the Kansas Turnpike as an "Interstate" highway constitutes an express warranty that the road meets all federal standards for interstate highways.

I concur with the majority's determination of issues 1 and 3. I strongly disagree with both the result reached on issue 2 and the rationale on which it is based.

K.S.A. 46-901 provides:

"(a) It is hereby declared and provided that the following shall be immune from liability and suit on an implied contract, or for negligence or any other tort, except as is otherwise specifically provided by statute:

"(1) The state of Kansas; and

"(2) boards, commissions, departments, agencies, bureaus and institutions of the state of Kansas; and

"(3) all committees, assemblies, groups, by whatever designation, authorized by constitution or statute to act on behalf of or for the state of Kansas.

"(b) The immunities established by this section shall apply to all the members of the classes described, whether the same are in existence on the effective date of this act or become members of any such class after the effective date of this act.

"(c) The state of Kansas and all boards, commissions, departments, agencies, bureaus and institutions and all committees, assemblies and groups declared to be immune from liability and suit under the provisions of subsection (a) of this section shall, in all express contracts, written or oral, with members of the public, give notice of such immunity from liability and suit."

The statute grants across-the-board immunity from liability and suit on implied contract, negligence or other tort, to every

arm, elbow, wrist and finger of the government of the State of Kansas. It would be difficult to conceive how the statute could be broader or more encompassing. The statute, as the majority concedes, was enacted after this court abrogated the judicially imposed state governmental immunity in *Carroll v. Kittle,* 203 Kan. 841, 457 P.2d 21 (1969). Legislative intent is clear—the legislature was restoring that which this court had taken away.

The only exception to the blanket immunity of the statute is "except as is otherwise *specifically* provided by statute."

In *Brown v. Wichita State University,* 219 Kan. 2, 547 P.2d 1015 (1976) (*Brown II*), the new statute was attacked on the same ground as here, that it denied equal protection. The argument in *Brown II* was that the discriminatory classification existed by virtue of the fact other units of government (municipalities) were not included therein. Likewise, it was argued that it created an improper classification by discriminating between activities of the state government which were similar to those of private industry. The classification argument in *Brown II* was that the class created by the statute was discriminatory when compared to some classes outside the statute (private industry and municipalities). In upholding the constitutionality of the statute, this court said:

"The appellants contend K.S.A. 46-901, *et seq.,* denies equal protection by discriminating between the various levels of governmental tort-feasors by imposing liability based on the *unit* of government involved. But withholding a legal remedy for persons injured by the state, while allowing a remedy for a nongovernmental tortious activity, or a municipal government's tortious activity, is not discriminatory governmental action. [Citations omitted.] The constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. [Citations omitted.] The Fourteenth Amendment does not deny to states the power to treat different classes of persons in different ways." p. 14.

Much of the *Brown II* opinion deals with the special need for protection of the class (state activities) as opposed to those outside the class (private industry and municipalities).

The classification in K.S.A. 46-901 exempts *all* state agencies from liability except where such immunity is waived, conditionally or otherwise, by statute. The statute does not classify the Kansas Turnpike any differently than a highway within the state highway system. K.S.A. 68-419 conditionally abrogates the immunity granted by 46-901.

The Kansas Turnpike is clearly different from other highways in the state in that it was constructed from private funds and operates on self-generated income. The legislature is better equipped to handle the difficult policy question of the Kansas Turnpike Authority's immunity than is this court. *Brown II*. The stated need for change, fiscal impact, etc., would all need to be studied carefully before the legislature acted.

K.S.A. 46-901 was held to be constitutional in *Brown II*. I will not attempt to repeat the lengthy and well reasoned majority opinion therein, but simply adopt the relevant parts of same as a part of this dissent.

In the case before us a different twist is made on the unequal protection issue. Here the plaintiff is attacking one member of the class granted immunity on the ground the legislature has seen fit to conditionally waive the immunity of another member of the same class by a specific statutory enactment (highway defect statute, K.S.A. 68-419). The governmental immunity statute before us treats the Kansas Turnpike and the highways that are a part of the state highway system identically. I fail to see how this constitutes discrimination, invidious or otherwise.

I feel, however, that some discussion on the term "classifications" is necessary since the majority has taken that term from *Brown II* and, by a tortured construction, used it to hold that failure to include the Kansas Turnpike in the highway defect statute (K.S.A. 68-419) constitutes a "class of motorists who are subjected to invidious discrimination in violation of the equal protection clauses of the federal and state constitutions."

It must be noted that plaintiff does not attack the constitutionality of the highway defect statute. If any classification, proper or improper, has occurred, it would have had to occur in K.S.A. 68-419, where one highway is treated differently from another. Yet, the majority holds that K.S.A. 46-901, with no distinction or classification of any kind among highways operated by the state or agency thereof (including the Kansas Turnpike Authority), creates a discriminatory and fatally defective classification.

The plaintiff herein has waged a direct attack on the constitutionality of the governmental immunity statute and asks this court to overrule *Brown II* and declare the statute unconstitutional. The majority has declined to do either. Instead, on its own initiative, the majority has elected to perform a prefrontal lobotomy on the

statute to obtain what it considers to be a fair result. The statute still looks the same, but an unseen part of it has been removed without leaving even a telltale scar.

The means used to accomplish this feat of judicial surgery is to declare that it is only a little bit unconstitutional. The old saying about the impossibility of being a little bit pregnant immediately comes to mind, but let us study how this result was reached. The majority cites the following from *Mintz v. Baldwin,* 2 F. Supp. 700, 705 (N.D.N.Y. 1933):

"It is well settled that a statute may be constitutional as applied to one set of facts and unconstitutional as applied to another."

To put the statement in context, some sentences following the above need to be included:

"And this is so, not only when the unconstitutional operation of the statute is the result of a distinct and grammatically separable provision, but also when it is the result of general prohibitory language contained in a single clause, provided the intent of the Legislature will not be violated by allowing the statute to operate in a limited field. . . .

". . . To enforce the order within constitutional limits will in no way violate the intent with which it was promulgated. Though it could not constitutionally operate upon . . . [some persons], the plaintiff . . . has not brought himself within the class of persons on whom it could not constitutionally operate. He cannot be heard to complain that the order is unconstitutional as applied to others." p. 705.

Although it is not intended that this be a voluminous dissent it is important to note how the majority has skillfully mixed apples and oranges to reach the result it desires. 16 Am. Jur. 2d, Constitutional Law § 181 *et seq.,* deals extensively with the question of partial unconstitutionality. It first deals with severability which is not before us, as not even the majority is attempting an actual severance of any part of the statute. However, it does illustrate that to sever a statute something has to be visibly removed from it. The majority holds that a particular result of the statute (when read in conjunction with the highway defect statute) is unconstitutional. At first blush, the majority's carefully excerpted statement from *Mintz* appears to support its position; however, it relates to a different situation entirely. 16 Am. Jur. 2d, Constitutional Law §§ 194, 195, explain the situations where such interpretation is appropriate.

§ 194 states:

"Statutes may be unconstitutional and void as to their application to a part of

their subject matter and valid as to other parts, or, to state the problem more concretely, they may be constitutional in operation with respect to some persons and states of fact and unconstitutional as to others. It has been said that if a statute is reasonably appropriate in its overall approach, it should be upheld notwithstanding it may be unconstitutional in special circumstances, especially when it is apparent that the legislature would want the act to prevail where constitutionally it may. And even though the provision is a single idea, a statute partially void because of inapplicability to a portion of the subject matter covered will be treated as operative and enforceable as to the one portion and inoperative as to the other if the subject matter is of such a nature that it may be divided.

"A statute which contains separate prohibitions of different acts or a prohibition applying to different classes of objects may usually be severed without much difficulty. A law may be unconstitutional so far as it affects natural persons, and yet as to corporations it maybe valid.

"In some cases the statute cannot be severally construed so as to be given partial application consistent with its purpose as designed by the lawmakers, and if it cannot be made effective in accordance with the legislative intent in enacting it originally by limiting its operation to proper subject matter, the whole statute falls. Moreover, where the same general clause of a statute appears to operate equally on all classes of cases, it seems that it is not proper judicially to limit the effect of the language to those who alone may be properly subject to statutory regulation." pp. 427-28.

## § 195 states:

"A class of cases in which a statute may be in part valid and in part invalid consists of laws enacted by a legislature in general terms, covering not only persons and property as to which the legislature clearly has the right to make regulations, but apparently applying also to individuals and property protected from such legislation. A law may be unconstitutional and void in relation to particular cases, and yet valid to all intents and purposes in its application to other cases which differ from the former in material characteristics. In other words, where a statute has been passed by the legislature and, in relation to certain cases which it affects, some part of it is not within the competency of the legislative power or is repugnant to some provision of the constitution, such part may be adjudged void and of no avail, while all other parts of the act not obnoxious to the same objection may be upheld as valid and have the force of law. The courts in some instances by a restrictive construction have limited the effect of a statute to cases clearly within the field of legislative control.

"The rule which sustains portions of a law in and of themselves valid in their operation arises from the theory that a statute which is unsustainable in its literal terms because it is valid in some of its applications but not in others is to be read as though the latter were excepted from its operation.

"It has been said by the Supreme Court of the United States that an exception of a class constitutionally exempted cannot be read into general words merely for the purpose of saving what remains.

"The most common cases in which the field of legislation is restricted by implication are those in which certain individuals are protected from legislative interference by reason of the operation of the clauses prohibiting the impairment

of the obligation of contracts, the passage of retrospective laws, and encroach-ments by Congress and the state legislatures respectively on each other's domain. [*State v. Smiley,* 65 Kan. 240, 69 Pac. 199.] Thus, an act of the legislature may be unconstitutional so far as it purports to operate retrospectively or to have retroac-tive application to past contracts, or to the extent that it is found to impair the obligation of a contract, and yet it may be valid and constitutional in other respects and as applied to future cases.

"The general principle has also been applied to the large and important class of cases where state laws are partially invalid as interfering with interstate com-merce. Such statutes have frequently been treated as severable and sustained to the extent of regulating commerce within the confines of the state. The reverse is the case where an act of Congress, while embracing subjects within its authority in regulating commerce, also includes subjects not within its constitutional power. If the two are so interblended in the statute that they are incapable of separation, the entire statute will be held to be repugnant to the Federal Consti-tution and nonenforceable. Thus, if the terms of a state law are broad enough to apply to trusts and conspiracies of all persons, including those engaged in interstate commerce, it would be proper for the courts to limit such a statute by construction to those cases to which it could alone legally apply. On the other hand, if Congress should pass an antitrust law the general terms of which should include subjects lying without as well as those within its sphere of legislation, such act might be restricted by construction to those matters in respect to which Congress was qualified to enact regulations, without nullifying it as a whole." pp. 429-30.

The cases cited by the majority arise on a variety of factual situations. There is, however, a common thread. In each case a member of a class within the statute itself objects to his inclusion at all therein, or that the restrictions are too broad as to him. One of the cases, *Dahnke-Walker Co. v. Bondurant,* 257 U.S. 282, 66 L.Ed. 239, 42 S.Ct. 106 (1921), involved a statute wherein a class was partially controlled by federal regulation (interstate com-merce).The statute was held to extend only to those who could legally be subject to it (not under federal regulation). The statute in *Mintz v. Baldwin,* 2 F. Supp. 700 (N.D.N.Y. 1933), pertained to the quarantine of diseased cattle and the conflict between state and federal regulations was again the issue. The statute was limited, by the court's opinion, to apply to cattle which were not yet under federal jurisdiction, as the applicable federal law preempted the field as to cattle which had been federally in-spected. The statute in *Kansas City Ry. v. Anderson,* 233 U.S. 325, 58 L.Ed. 983, 34 S.Ct. 599 (1914), imposed double damages on railroads for certain acts if the claims were not paid within thirty days. The effect of the decision was that the statute was constitu-tional when limited to cases where the claim did not exceed the loss, but unconstitutional when the claim exceeded the loss.

The sole Kansas case cited in this area deserves additional consideration. *State v. Smiley,* 65 Kan. 240, 69 Pac. 199 (1902), *aff'd* 196 U.S. 447, 49 L.Ed. 546, 25 S.Ct. 289 (1905), has been frequently cited in opinions from other jurisdictions. The state statute involved was antitrust legislation which was literally so broad as to cover virtually any agreement between businessmen. This court said:

"He cannot be heard to object to the statute merely because it operates oppressively upon others. The hurt must be to himself. The case, under appellant's contention as to this point, is not a case of favoritism in the law. It is not a case of exclusion of classes who ought to have been included, the leaving out of which constitutes a denial of the equal protection of the law, but it is the opposite of that. It is a case of the inclusion of those who ought to have been excluded. Hence, unless appellant can show that he himself has been wrongly included in the terms of the law, he can have no just ground of complaint. This is fundamental and decisively settled. (*City of Kansas City v. Railway Co.,* 59 Kan. 427, 53 Pac. 468, 52 L.R.A. 321, affirmed under the title *Clark v. Kansas City,* 176 U.S. 114, 20 Sup. Ct. 284, 44 L.Ed. 392; *Supervisors v. Stanley,* 105 U.S. 305, 311, 26 L.Ed. 1044; *Pittsburg &c. R. Co. v. Montgomery,* 152 Ind. 1, 49 N.E. 582, 71 Am. St. Rep. 301, 311.)" p. 247.

The common thread in these cases is that each involves a person (or corporation) seeking to void a statute in which it is expressly included. The objecting party is a member of the class whose conduct (or liability) is regulated by the statute. The objecting party is attempting to reduce the class or limit the liability assigned to his class. In no instance have I found where a class was modified or limited on complaint by someone not included within the class.

The majority, however, is using these cases to change a class objected to by an outsider when the entity within the class is urging that no change be made.

All of the discussion in this dissenting opinion and in the majority opinion as to partial unconstitutionality arises by virtue of the innovative approach taken by the majority. Partial unconstitutionality is not urged or briefed by the parties. It is my belief that this subject is not properly before the court, but its inclusion in the majority opinion leaves me no alternative but to respond.

At the time of *Brown II* no state in the United States had abrogated statutorily imposed governmental immunity. The majority has found one opinion, *Harvey v. Clyde Park Dist.,* 32 Ill. 2d 60, 203 N.E.2d 573 (1964), which, although not directly in

point, gives some support for the abrogation of statutory governmental immunity. It does little, however, to bolster the majority opinion as the Illinois court was concerned with one of a patchwork quilt of statutes which dealt with the general topic of governmental immunity. The court struck the one statute down as unconstitutional. The question of partial invalidity of a particular statute was not involved.

There is an old legal saying that "harsh facts make bad law." This arises where an extreme factual situation makes the application of a legal principle so unjust as to be unacceptable. To resolve the problem, courts from time to time create exceptions in judicially established principles to serve the ends of justice in particular areas. These exceptions are sharply limited in application to situations where the general rule is unduly harsh. Such exceptions deal with the application of legal principles or statutes and not with their constitutional validity. Such exceptions should only be, and generally are, cautiously created or applied.

In my opinion, the majority opinion is in fact unwarrantably creating such an exception under the guise of partial unconstitutionality. By so doing the doors have been flung open to innumerable problems in the future. To reach a result it deems desirable in this case, the court has hacked a dangerous path of uncertainty in the law which is legally unsupportable and, because of its broad implications, will create a multitude of future problems.

Before closing, I direct attention to the following statement from *Brown II*, 219 Kan. at 9: "As judges our desire to achieve what may seem fair to us as individuals cannot overcome the laws enacted by our duly elected legislators."

I submit that the majority has failed to apply this basic judicial precept to the case at hand. I would reaffirm *Brown II* and *Woods v. Kansas Turnpike Authority,* 205 Kan. 770, 472 P.2d 219 (1970), as controlling in this case, and affirm the trial court on all issues.

I disagree completely with the result reached by the majority that the Kansas Turnpike Authority is not immune from suit by virtue of K.S.A. 46-901. However, if such determination is to be made, then at the very least it should be subject to the same conditional abrogation of immunity as are highways that are a part of the state highway system, including notice of claim and prior notice of defect, all as set forth in K.S.A. 68-419.

SCHROEDER, C.J., and FROMME, J., join in dissent.